## COTTON v. THOMPSON.

(Court of Civil Appeals of Texas. Galveston. May 20, 1913. Rehearing Denied June 12, 1913. Second Motion for Rehearing Denied July 1, 1913.)

1. USURY (§ 142*) — ACTION FOR PENALTY — SUFFICIENCY OF PETITION.

A petition in an action to recover the statutory penalty for usury, which alleged that plaintiff borrowed $30 of defendant for 30 days, executing as security therefor his note and power of attorney, authorizing defendant in default of payment to draw his wages, and paid defendant $6 per month interest for 10 months, and borrowed other amounts upon similar terms, that the interest charged was usurious, and that the moneys were borrowed of defendant's agent and the interest was paid to him, was good as against a general demurrer.

[Ed. Note.—For other cases, see Usury, Cent. Dig. §§ 428–433; Dec. Dig. §.142.*]

2. DEBT, ACTION OF (§ 11*)—PLEADING—DEMAND.

In ordinary actions of debt a failure to allege a demand for and refusal of payment renders the petition bad on general demurrer.

[Ed. Note.—For other cases, see Debt, Action of, Cent. Dig. §§ 27, 28; Dec. Dig. § 11.*

3. PRINCIPAL AND AGENT (§ 189*)—USURY (§ 142*)—RECOVERY "BY ACTION OF DEBT"—PLEADING—DEMAND—AGENCY.

Under Rev. Civ. St. 1911, art. 4982, providing that usurious interest received may "by action of debt" be recovered with an equal amount as penalty, the collection of such interest does not create the relation of debtor and creditor, and in a suit to recover it the allegations essential in a common-law action of debt need not be made, the term "by action of debt" not requiring that the action be technically the common-law action of debt; and an allegation that the payments were made to defendant's agent, in the absence of any allegation that defendant had more than one agent, was sufficient to enable defendant to prepare his defense; and under the express terms of the statute the right of recovery is the same whether interest was exacted under a written or a verbal contract.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 713–717; Dec. Dig. § 189;* Usury, Cent. Dig. §§ 428–433; Dec. Dig. § 142.*

For other definitions, see Words and Phrases, vol. 2, pp. 1886–1887.]

4. PLEADING (§ 433*) — DEFECTS — CURE BY JUDGMENT.

Error, if any, in overruling a special exception to a petition, alleging that usurious payments of interest were made to defendant's agent without showing that he had more than one agent, was cured by judgment for plaintiff upon evidence conclusively showing that defendant had but one agent.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 1451–1477; Dec. Dig. § 433.*]

5. PLEADING (§ 229*)—"TRIAL AMENDMENT."

The office of a "trial amendment" is to supply allegations in a pleading after exception thereto has been sustained.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. § 591; Dec. Dig. § 229.*]

6. PLEADING (§ 279*) — SUPPLEMENTAL PETITION—DISCRETION OF COURT.

It was within the discretion of the court to permit plaintiff to file a supplemental petition after the parties had announced ready for trial and after the exceptions to plaintiff's petition had been overruled.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 836–841; Dec. Dig. § 279.*]

7. APPEAL AND ERROR (§ 1170*) — HARMLESS ERROR — ALLOWING SUPPLEMENTAL PETITION.

Error, if any, in allowing plaintiff to file a supplemental petition after the parties had announced ready for trial and after the exceptions to his pleadings had been overruled was not such a denial of the rights of defendant as to probably cause an improper judgment, within rule 62a for Courts of Civil Appeals (149 S. W. x), and hence was not reversible error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4032, 4066, 4075, 4098, 4101, 4454, 4540–4545; Dec. Dig. § 1170.*]

8. APPEAL AND ERROR (§ 555*) — STRIKING OUT BILLS OF EXCEPTION—CONSIDERATION OF ASSIGNMENT.

Where bills of exception have been stricken out so that there are no exceptions in the record to support the assignments, the court is without power to consider such assignments.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 2955; Dec. Dig. § 555.*]

9. USURY (§ 142*)—ACTION TO RECOVER PENALTY—PLEADING AND ISSUES.

In an action to recover the statutory penalty for usury, where plaintiff alleged that he had borrowed money of defendant, who had charged and collected interest thereon in excess of the legal rate, but did not set out the contract, which, as pleaded by defendant, evidenced a sale by plaintiff to defendant of a part of his wages, and where plaintiff by a supplemental petition alleged that the contract did not truly represent the transaction, but was only a scheme of defendant for collecting usury, it was not necessary that plaintiff allege the execution of the contract as the result of fraud or mistake in order to prove that it was in fact other than the contract pleaded by defendant, but the allegations of his supplemental petition were, sufficient to let in proof of its true character.

[Ed. Note.—For other cases, see Usury, Cent. Dig. §§ 428–433; Dec. Dig. § 142.*]

10. USURY (§ 106*) — SUBJECT-MATTER — ACTION FOR USURIOUS INTEREST.

The right to sue for usurious interest paid may be the subject of compromise and adjustment, where such compromise is made in good faith, and the right to recover the usury is waived by the payer for a sufficient consideration.

[Ed. Note.—For other cases, see Usury, Cent. Dig. § 263; Dec. Dig. § 106.*]

11. USURY (§ 104*)—DEFENSES—RELEASE AS ESTOPPEL.

Plaintiff applied to defendant for a loan and signed a contract upon its face selling a certain part of his wages and containing a power of attorney to collect the same, but it was not intended that defendant should collect the wages, which were in fact collected by plaintiff and paid to defendant, and after several of such loans, illegal because of usurious interest, plaintiff at defendant's request signed a so-call-

ed release or stated account; there being no valid consideration therefor. *Held,* that under the facts the release did not estop plaintiff to sue for a recovery of the usurious interest.

[Ed. Note.—For other cases, see Usury, Cent. Dig. §§ 260, 261; Dec. Dig. § 104.*]

12. USURY (§ 104*) — ACTION TO RECOVER PENALTY — PLEADING — FRAUD IN OBTAINING RELEASE.

Where plaintiff who had borrowed money of defendant at usurious rates of interest had signed a so-called release, procured by defendant as an estoppel against a suit to recover, it was not necessary for plaintiff to show that the release was signed by him as the result of fraud or mistake.

[Ed. Note.—For other cases, see Usury, Cent. Dig. §§ 260, 261; Dec. Dig. § 104.*]

13. USURY (§ 142*) — ACTION — SET-OFF OF AMOUNT OWED DEFENDANT.

In a suit to recover the statutory penalty for usury the amount owed by plaintiff to defendant was allowable to defendant as an offset against the amount of plaintiff's recovery.

[Ed. Note.—For other cases, see Usury, Cent. Dig. §§ 428–433; Dec. Dig. § 142.*]

14. USURY (§ 100*)—RIGHTS OF PARTIES—APPLICATION OF PAYMENT.

Each payment made upon a contract affected with usury is a payment upon the principal applied by law, notwithstanding it was paid and received as payment of interest.

[Ed. Note.—For other cases, see Usury, Cent. Dig. §§ 219–234; Dec. Dig. § 100.*]

Appeal from Galveston County Court; Geo. E. Mann, Judge.

Action by William Thompson against Almon Cotton. Judgment for plaintiff, and defendant appeals. Affirmed.

J. V. Meek, of Houston, for appellant. Geo. G. Clough, of Galveston, for appellee.

McMEANS, J. Plaintiff, William Thompson, appellee here, brought this suit to recover of the appellant, Almon Cotton, the penalty prescribed by the Revised Statutes for charging and collecting usury on money loaned.

Plaintiff alleged that on or about November 7, 1909, he borrowed of and from the defendant the sum of $30 for 30 days, and executed as security therefor his note and power of attorney, by the terms of which the defendant was authorized in the event of default in the payment of said sum to draw his said wages; that as interest upon said loan plaintiff paid the defendant the sum of $6 per month for 10 months, making the sum total of $60 paid to the defendant; that on or about December, 1909, plaintiff borrowed of and from the defendant the sum of $66 for 30 days, executed as security therefor his note and power of attorney, by the terms of which the defendant was authorized in the event of default in the payment of said sum to draw his said wages; that as interest on said loan the plaintiff paid defendant the sum of $7.65 per month for nine months, making the total amount paid equal $68.85; that on August, 1910, at the time the last payment of interest was made, plaintiff had

paid the principal due upon said note, to wit, $66, also $30, borrowed of defendant on November 7, 1909; that on or about the 1st day of July, 1911, plaintiff borrowed of and from the defendant the sum of $30 for 30 days, and executed as security therefor his note and power of attorney, by the terms of which in the event of default in the payment of said sum defendant was authorized to draw his said salary, and plaintiff paid defendant upon same, as interest, $6 per month for four months, making the total $24 as interest paid upon said loan. Plaintiff further alleges that in October, 1911, plaintiff borrowed of and from the defendant the sum of $20, at which time his note for $30 was merged into his note for $20, making a note for $50, which note and power of attorney provided in the event of default in the payment that defendant would draw his said wages; that upon said $50 plaintiff paid as interest to defendant on or about November 1, 1911, the sum of $7.50 interest. Plaintiff further alleges that said interest charged was usurious and above the legal rate allowed by law, for this, that the same was in excess of 20 per cent. upon said loan, and that by being charged in said usurious interest plaintiff has been damaged in the sum of $320.70, double the amount of interest so charged. Plaintiff further alleges that said moneys were borrowed by the plaintiff of the defendant's agent at Galveston, Tex., and that said interest was paid to said defendant's agent at Galveston, Tex., to his great damage, $500.

The defendant demurred generally to plaintiff's petition, and also urged a special exception questioning the sufficiency of the petition, because it did not set out with particularity the contract alleged to have been made between himself and defendant, and because it did not give the name of defendant's agent with whom the alleged contract was made, and failed to give the dates when the several alleged payments were made. He also, in connection with the special exception, asked the court to require plaintiff to allege with particularity in his petition the omissions which were the basis of the special exception. The general demurrer, special exception, and the request above mentioned were overruled by the court. Defendant answered by general denial, and specially alleged that it was not true that he ever at any time, either in person or by his agent, loaned plaintiff any sum whatever; but that such transactions that he ever had with the plaintiff, acting through an agent, were that heretofore, prior to the bringing of this suit, on various days and dates, at plaintiff's special instance and request, the defendant, acting through an agent, purchased from plaintiff at different times certain portions of his wages to be earned under an existing contract of employment with Fowler & McVitie

or other employer, with whom plaintiff was engaged at that time; that under each and all of said assignments which had been executed prior to the 2d day of November, 1911, when the money assigned was earned it was delivered to defendant's agent by the plaintiff, and each and all of said assignments, which were in writing, were either destroyed or the name torn therefrom and delivered to the plaintiff; that on the 2d day of November, 1911, at the special instance and request of plaintiff, this defendant, acting through his agent, purchased $57.50 of his salary to be earned while in the employ of Fowler & McVitie, and took a written assignment thereof, which was identical with the other assignments which had been taken prior thereto which were paid by the plaintiff, and plaintiff was paid by this defendant, through his agent, the sum of $50 for the amount of wages so assigned, being in said written assignment of November 2, 1911, a copy of said assignment is hereto attached, marked Exhibit A and made a part hereof.

Defendant further alleged that "plaintiff has not in good faith brought this suit, and that he should not be permitted to maintain and prosecute it any further, for this, that on March 4, 1911, the plaintiff, being desirous on that day of selling to this defendant the sum of $35 of his wages to be earned under a then existing contract for the sum of $30, and this defendant, acting through his agent, who had had prior transactions with plaintiff by purchasing his salary as alleged above, demanded that before he would have any further transactions or purchase any of plaintiff's wages that a full settlement of all transactions should be had, and that on said day there was a full and complete settlement of all past dealings, and plaintiff and defendant executed a mutual receipt in writing one to the other by which both parties released all claims and demands of every kind or character that either had against the other, and after the execution of said full and complete release, a copy of which is attached and marked Exhibit B, that on several occasions thereafter the defendant purchased from plaintiff certain portions of his wages or salary, and that on November 2, 1911, the defendant, acting through his agent, purchased from plaintiff the sum of $57.50 of his wages, and paid him therefor the sum of $50 in cash, and not one dollar of said money has ever been paid to defendant, nor has this defendant ever filed said assignment or a copy thereof, or in any way given notice thereof to plaintiff's employer; that there is now due this defendant on said assignment the sum of $57.50, and this defendant shows that after said release was executed by the plaintiff which induced him to continue to buy his certain portions of his salary that on several purchases made since the execution of said release all of the discounts that have been received by this defendant only amount to the sum of $37.50; that by reason of the execution of said release if, as a matter of fact, the plaintiff ever had any cause of action against this defendant for usury, as alleged by him, on the 4th day of March, 1911, plaintiff would be estopped to recover therein, and is now estopped; and that since said date as to any and all transactions had between plaintiff and defendant the discounts received by defendant on the purchase of plaintiff's salary only amounted to $37.50; and that by reason of said fact this court has no jurisdiction over said amount, or any amount that could be properly and legally litigated in this action, and defendant now here pleads said release in bar of the prosecution of this suit, or any claim prior to March 4, 1911, and he now here presents this plea also as a plea to the jurisdiction of this court, and prays that this cause be not further prosecuted."

The contract alleged by defendant to have been made between himself, through his agent, and the plaintiff, and made an exhibit to his answer, is dated November 2, 1911, and is as follows: "Know all men that I, the undersigned, for and in consideration of fifty dollars, to me in hand paid by Almon Cotton of Houston, Harris county, Texas, and for other valuable considerations, have sold and by this instrument do sell, alien, transfer, and set over to said Almon Cotton the sum of fifty-seven and $50/100$ dollars out of my salary or wages now due or to become due me for the month of November, 1911, from Fowler & McVitie of the state of Texas, hereafter called party of the third part. In case the said sum of money so aliened and transferred is not fully satisfied out of said month's salary or wages, then all money, claims, or demands accruing thereafter to me from said part ...... up to said sum are hereby sold, aliened, and transferred to the said Almon Cotton, who is hereby authorized and empowered to ask for or sue for same in my name or his own name as he may elect; and I hereby direct the said party of the third part to pay to said Almon Cotton, or to his order, the said sum of money so aliened and transferred as aforesaid; in addition to the above, in case said amount is not paid by said part ...... of the third part, I further alien, assign, and transfer to the said Almon Cotton any sum of money due or which may become due me as salary or wages for any month subsequent to the month or months so assigned from any person, firm, or corporation by whom I may be engaged within a period of four years from date hereof, or so much of said salary or wages as may be required to satisfy the aforesaid sum of money aliened and transferred by this assignment as aforesaid; and the said Almon Cotton is hereby authorized to collect and receipt for the same, and said receipt shall be absolutely binding and conclusive upon me when issued to any person, firm, or corporation for whom I may work; and, further, I bind myself to defend the

said Almon Cotton's rights under this assignment, and in case the same is placed in the hands of an attorney or suit is brought to collect the same, then in either event I do assign, alien, and transfer to said Almon Cotton as aforesaid an additional sum of $5 as attorney's fees, and the said $5 is hereby aliened and transferred and is collectible and ordered to be paid out of my said salary or wages, and is to be receipted for in all respects and in same manner as said original sum so assigned as aforesaid. I fully understand that the above is an absolute sale and transfer of my salary or wages for the price above stated, and that no loan of any money is being made to me or intended or understood by me to be made."

The mutual receipt pleaded by defendant and attached as Exhibit B to his answer is as follows: "March 4, 1911. An account has this day been stated between Texas Loan Company, Almon Cotton, sole proprietor, and W. M. Thompson; all claims and demands of all kinds or character which each has against the other has been included in said statement of accounts, and a full and complete·settlement of same had, and the balance due the Texas Loan Company, Almon Cotton, sole proprietor, and W. M. Thompson is $35.00, Thirty-five and no/$_{100}$. This mutual receipt has been executed by each of us in full settlement, accord, and satisfaction of all claims and demands which each has against the other to this date of whatever character. W. M. Thompson. Almon Cotton, Per Louis F. Cambeilk."

Plaintiff filed a supplemental petition in reply to defendant's answer, in which he denied that the transaction sued upon was an assignment or sale of wages due him, and alleged that the said contract was simulated and a device and scheme of defendant to evade the usury laws; that plaintiff did not in fact assign or sell his wages; but that the form of the transaction was in fact a security for the loan of money sought and obtained by plaintiff from defendant, as stated in his original petition; and that the same was but a colorable transaction, having for its object the collection of unlawful interest from plaintiff by defendant. He further averred that the alleged settlement pleaded by defendant was without consideration; and that the same did not contemplate and was not intended to contemplate any character of settlement in satisfaction of his claim or cause of action against the defendant for usurious interest charged and collected; that, having received nothing whatever of value by reason of the execution of the alleged mutual receipt, and the same not being contemplated as being any satisfaction of any claim arising out of the loan or the payment of usurious interest, the same was void; and that the consideration therefor had failed. The pleading was duly sworn to.

Plaintiff filed a trial amendment in which he alleged that "no receipts were ever issued to him on payments or interest, and no record thereof kept of the particular dates of payment; but that each payment of usurious interest was made in the amounts hereinbefore stated, and for each month, and between the third and ninth days thereof of each successive month after receiving said loan; and that he is unable to give any better or more certain time or date of said payments of interest than as hereinbefore stated, but defendant has a complete record thereof in reports of his manager, and in books kept by him in duplicate, and in the possession of defendant, which he is hereby given notice to produce on the trial or secondary evidence will be offered thereof." A trial before the court without a jury resulted in a judgment for plaintiff for $320.-70. Defendant has appealed.

[1] Appellant's first and twelfth assignments complain of the action of the court in overruling his general demurrer to plaintiff's petition. The substance of the petition is set out in our statement of the pleadings, and we think the petition is good as against a general demurrer. The omissions pointed out in the proposition under the first assignment are such as could not be reached by a general demurrer, but should have been made the subject of a special exception. The contention made in the proposition under the twelfth assignment is that the petition was demurrable because the statute provides that suits to recover usurious interest should be in the nature of an action for debt, and that the rule of pleading applicable to actions for debt apply, hence there should have been an allegation of a demand upon defendant for payment and of a refusal on his part to pay, and the petition, containing no such allegation, rendered it fatally defective.

[2] The following authorities hold that in ordinary actions for debt a failure to allege a demand for and refusal of payment renders the petition bad on general demurrer: Carter v. Olive, 128 S. W. 478; Grant v. Whittlesey, 42 Tex. 320; Brackett v. Devine, 25 Tex. Supp. 194; Whitaker v. Record, 25 Tex. Supp. 382. The ruling in these cases is based upon the principle that before a creditor can sue for the recovery of a debt there must have been a breach of the debtor's contract to pay; hence a petition which alleges that the defendant owes the plaintiff, but fails to allege that he has refused to pay, is defective because it does not allege a breach of the contract. In Brackett v. Devine, supra, plaintiff alleged the execution of a note by defendant, his ownership of the same, and prayed for citation and for judgment, and it was held that "plaintiff has failed to state a cause of action, in that he does not aver a breach of the contract sued on." Substantially the same reasons are given for similar rulings in Grant v. Whittlesey and Whitaker v. Record, supra, and Carter v. Olive, 128 S. W. 478, while bottomed on these decisions does

not undertake to state the principle governing.

[3] The statute provides that usurious interest may be recovered "by action of debt." Revised Statutes 1911, art. 4982. We do not understand from this that in a suit to recover such interest every essential allegation in a common-law action for debt must be made in the petition, nor do we understand therefrom that the collection of usurious interest creates the relation of debtor and creditor as between the parties, as such relation is generally understood. The creditor who collects usurious interest never contracts with the debtor to pay him the amount so collected, hence there would be no breach of his contract if he refused to repay the same on the debtor's demand. The object of such suit is to recover double the amount of interest paid as a penalty, not as a debt. As said by our Supreme Court in Rosetti v. Lozano, 96 Tex. 60, 70 S. W. 205, in construing the statute in question: "By 'action of debt' the Legislature did not, we think, mean to require that the action be technically that action known as such at common law, for the reason that we have no such forms of action." Again, in discussing the sufficiency of the pleading to sustain a judgment, the court says: "The facts upon which the right arises are stated in a general way with a prayer that the amount be allowed. This was, we think, sufficient to admit evidence and support the judgment." In the instant case the substance of the allegations of plaintiff's petition is that he borrowed certain sums of money from defendant, upon which defendant charged and collected from him as interest a much larger sum than the rate of interest allowed by law, and that plaintiff was therefore entitled to recover double the amount he so paid defendant. In such circumstances an allegation of demand upon defendant and refusal on his part to pay is unnecessary. The assignments are overruled.

We think the second assignment, which complains of the action of the court in overruling appellant's special exception to plaintiff's petition, does not point out reversible error. The petition sufficiently stated the facts constituting plaintiff's cause of action. It was not essential that the petition should state whether the contract under which he claimed he paid usurious interest was verbal or written, for his rights were the same whether the usurious interest was exacted under the one or the other. R. S. art. 4982. The petition alleged that the transactions were had with defendant's agent at Galveston, and we think that, in the absence of an allegation that there were more than one agent in Galveston, this was sufficient to put defendant on notice of what he would have to meet with proof and to enable him to prepare his defense in this regard.

[4] The evidence conclusively shows that appellant had but one agent in Galveston who handled such business for him; and even if it were error to overrule the special exception the error was cured by the judgment and was harmless. The dates of the alleged payments of usurious interest were not given in the original petition; but this omission was cured in the plaintiff's supplemental petition. The assignment is overruled.

[5, 6] It was within the discretion of the court to permit plaintiff to file a trial amendment after the parties had announced ready for trial and after the exceptions to the pleadings of plaintiff had been overruled. It is true that the office of a trial amendment is to supply allegations in a pleading after exceptions thereto have been sustained; but the pleading objected to, while styled "trial amendment," was nothing more than a supplemental petition.

[7] But whether this be true or not, and even if the court committed error in allowing the pleading to be filed at the time it was, we think such error did not amount to such a denial of the rights of the appellant as to be reasonably calculated to cause or probably cause the rendition of an improper judgment in the case (rule 62a, 149 S. W. x), and appellant's fifth assignment, raising the point, is overruled.

[8] The sixth and seventh assignments are predicated upon the admission of certain testimony offered by plaintiff over appellant's objection, and the eighth, ninth, tenth, and eleventh are based on the exclusion of evidence offered by him on the objection of appellee. Appellant duly excepted to the action of the court and took his bills of exception; but the bills of exception were by this court, on motion of appellee, stricken from record at a former day of this term for the reason that they were not filed in the trial court within the time required by law. There being, therefore, no bills of exceptions in the record to support the assignments, this court is without power to consider the same.

[9] Under the thirteenth assignment of error appellant presents the proposition that, "when plaintiff sues for usury alleged to be due him by reason of the fact that he had paid on various loans made to him interest in excess of the rate allowed by law, it is error for the trial court to render judgment for plaintiff on said allegations, when the proof shows that such transactions as the plaintiff had with the defendant were upon written contracts which showed upon their face to be sales by the plaintiff and purchases by the defendant of certain portions of his wages to be earned under a then existing contract, under which plaintiff was entitled to earn money, when there were no pleadings in the record attacking said instrument for fraud, or as having been signed by mistake or accident, and when there is no allegation that there was any contract other than the written contract."

Plaintiff alleged that he had borrowed cer-

tain sums of money from defendant, and that defendant had charged and collected interest thereon at a rate in excess of the rate allowed by law. He did not undertake to more definitely set out the contract by which the transaction was evidenced. But defendant pleaded the contract, and by its express terms it appears that the contract evidenced a sale by plaintiff to defendant of a portion of his wages for the consideration stated. The plaintiff in reply pleaded that the written contract did not truly represent the transaction between them, and that the contract was simulated and was a scheme and device of defendant for collecting usury and evading the usury laws, and the transaction took that form, which was colorable only, and had for its object the collection of unlawful interest from plaintiff.

We do not think there is any merit in the contention that, before plaintiff could prove that the contract was in fact other than the contract pleaded by defendant, he must have alleged that its execution was the result of fraud, accident, or mistake. Otherwise parties engaged in usurious transactions could always protect themselves in their unlawful acts of this character by requiring the execution of a contract specifically containing untrue recitals, and executed under the circumstances not amounting to fraud, accident, or mistake, and thus forever shut the mouth of the other parties from whom they had in this manner exacted unlawful tribute. We think that the allegations of plaintiff's supplemental petition were sufficient to let in proof of the true character of the transaction. The assignment is overruled.

Appellant's fourteenth assignment of error complains that the court erred in rendering judgment against him, because the mutual receipt and release sometimes called by him a "stated account" of date March 4, 1911, executed by plaintiff and defendant, was a full and complete settlement, and estopped plaintiff from the prosecution of this suit; and the release was not attacked by any pleading as having been signed by plaintiff through accident, fraud, or mistake. Appellant's contention under this assignment is that, when a party voluntarily has an accounting with the party with whom he has been dealing, and they state their accounts or transactions, and they agree upon an amount due to one of them, and each recognizes said amount, and each releases the other from any cause of action or any right the one may have against the other, and they agree that said statement and agreement should be a complete settlement, neither party will be permitted to evade the legal effect of said release in the absence of fraud, accident, or mistake; and it would not be necessary to show that anything was paid at the time of the execution of said instrument; but the promise and release of the one to the other would be a sufficient consideration to support the contract.

The receipt or release referred to in the assignment is set out above in full. Plaintiff's supplemental petition in reply to the answer of appellant pleading the release is also set out, from which it will be seen that plaintiff did not allege that his signature was procured by fraud or as the result of accident or mistake; but he did plead that the alleged settlement was without consideration, and that the same was not intended to be a settlement of any claim held by him against appellant for the recovery of usury. The release or receipt was introduced in evidence in the trial. Nothing in appellant's brief indicates that any evidence was introduced to show what understanding, if any, was had between the parties at the time of its execution, or that the appellant paid anything, waived anything, or forgave anything as a consideration for its execution. The testimony is silent as to any intention of appellant, or any attempt on his part, to purge the prior transaction of the taint of usury. On the other hand, plaintiff testified (and this is the only testimony referred to by appellant in his statement under the assignment now discussed): "At the time I signed this last instrument, this small one, * * * I was not paid anything to sign it; sure not. I guess I paid them. Mr. Cummings (appellant's agent through whom the transactions were had) never did say anything to me in that transaction as to me releasing my claim against him that I had for usurious interest; that matter was never discussed between us at all; never was anything said about it."

[10] There is no question that a right to sue for usurious interest paid may be the subject of compromise and adjustment. Stout v. Bank, 69 Tex. 392, 8 S. W. 808. But such compromise and adjustment to be valid should be entered into in good faith, and the right to recover the usury waived by the payer for a sufficient consideration. And even in some jurisdictions it is held that settlement of usurious dealings are excepted from the general rule that the parties to a voluntary settlement fairly made cannot reopen it, since otherwise usurers might make a practice of giving their illegal claims the form of an account stated, and thus evade the usury laws. 39 Cyc. 1024. It has also been held that, where the right to recover usurious interest is given by statute, an account stated will not prevent a party thereto from claiming the benefit of usury included in any of the items. 39 Cyc. 1025.

[11, 12] We think the following brief statement of the facts is justified by the evidence in the record. Plaintiff applied to appellant for a loan of money, and the loan was made. A contract was signed by the plaintiff, which upon its face was a sale of certain portions of his wages to be earned in a specified employment, and it contained a power of attorney in defendant's favor to collect the same.

It was not intended or contemplated that appellant should collect the wages to become due, and he never in fact collected them; but plaintiff collected his own wages as he had always theretofore done, and with the proceeds paid interest upon the loan at an usurious rate. Sometimes he would pay the entire principal of the loan, and then borrow another sum, and again give as security a bill of sale of his salary to be thereafter earned, with a power of attorney to appellant to collect same. After plaintiff had had several such transactions with defendant and had paid him a large sum as interest, illegal because more than permitted by law to be collected as interest, defendant requested plaintiff to sign and plaintiff did sign the instrument variously called by appellant "mutual receipt," "release," and "stated account." No consideration, valid in law, was paid plaintiff for its execution, and the usury in former transactions was not purged; and we think we are justified in saying that appellant's only object in securing the execution of the instrument was to create an estoppel against plaintiff from ever suing to recover the money illegally collected from him as interest. We think that under the facts stated the release referred to did not estop plaintiff to sue for a recovery of the amount illegally collected from him as interest, and that it was not necessary for plaintiff to allege and prove that the release was signed by him as the result of accident, fraud, or mistake. The assignment is overruled.

[13, 14] It is shown by the pleadings of both parties and by the evidence adduced on the trial that, of the various sums of money borrowed by the plaintiff from the defendant, the plaintiff still owes $50. We think that this sum should have been allowed by the trial court as an offset to the amount plaintiff was entitled to recover. "The law is that each payment made upon a contract affected with usury is a payment upon the principal, applied by the law, notwithstanding it was paid and received as payment of interest." Loan Association v. Biering, 86 Tex. 476, 25 S. W. 622, 26 S. W. 39. The judgment of the court below will be reformed by allowing appellant a credit of $50 upon the amount of the judgment rendered against him, and as so reformed is affirmed.

Affirmed.