DAVIS et al. v. WHITE et al.　(No. 871.)

(Court of Civil Appeals of Texas. El Paso. Nov. 7, 1918. On Rehearing, Dec. 5, 1918. Further Rehearing Denied Jan. 9, 1919.)

1. GUARDIAN AND WARD ⬡182(5)—SUIT ON BOND—PLEADING.

In suit upon guardianship bond, petition as against sureties was defective, where there was no allegation that they executed the bond, or that they refused to comply with the terms thereof.

2. GUARDIAN AND WARD ⬡182(5)—SUIT ON BOND—PLEADING.

Copying guardianship bond in petition, and alleging that sureties were indebted and liable to plaintiffs, would not show execution of the bond by the sureties.

3. GUARDIAN AND WARD ⬡182(2)—SUIT ON BOND — NECESSITY FOR ADJUDICATION IN COUNTY COURT.

In suit by wards on guardianship bond, special exception based upon theory that district court had no jurisdiction until wards had invoked all remedies possessed by them in probate court was without merit.

4. GUARDIAN AND WARD ⬡130 — CAPACITY TO SUE — VERIFICATION — BANK AS GUARDIAN.

Where bank sued as guardian, and there was no plea putting in issue its capacity to sue as such, there was no necessity for any proof as to its capacity, and it is unnecessary to inquire whether evidence of proceedings culminating in appointment and qualification of bank as guardian was properly admitted (Rev. St. 1911, art. 1906, subds. 2, 3).

5. GUARDIAN AND WARD ⬡2—SUPERVISING ESTATE—DUTY OF COURT.

Order of probate court, divesting itself of supervisory control of estate in guardianship, was a nullity.

6. GUARDIAN AND. WARD ⬡180 — SUIT ON BOND—LIABILITY OF SURETIES.

Notwithstanding decree in accounting suit against guardian as executor and trustee except-

⬡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

ed guardianship fund, if guardian in said suit or otherwise has in whole or part accounted to his wards for guardianship fund, his sureties, who were not made parties to accounting suit, are protected to the extent of such accounting.

**7. GUARDIAN AND WARD  ⬥⟳58 — COMMINGLING OF FUNDS—EXPENDITURES.**

Where guardian had ample funds as executor and trustee to educate and maintain wards, and was charged under the will to use such funds for that purpose, neither he nor his sureties are entitled to credit for any of guardianship fund expended for such purpose without authority from the probate court.

### On Rehearing.

**8. PLEADING ⬥⟳403(3)—DEFECTS IN PETITION —CURE BY ANSWER.**

In suit on guardianship bond, averment in answer sufficiently showing that sureties on bond signed as such would cure want of an allegation in petition that sureties executed the bond.

**9. CONTRACTS ⬥⟳277(1)—BREACH—DEMAND.**

When an obligation arises from a contract, it becomes the legal duty of the obligor to perform; and if he fails to do so, he has breached his obligation, though no demand has been made of him.

**10. GUARDIAN AND WARD ⬥⟳182(5) — SUIT ON BOND—PLEADING.**

Allegation that sureties on guardianship bond became liable and indebted to plaintiffs on the bond does not imply a failure on the part of the sureties to discharge their liability and indebtedness.

**11. APPEAL AND ERROR ⬥⟳1040(10)—ERRONEOUS OVERRULING OF DEMURRER—HARMLESS ERROR.**

Improper overruling of demurrer to petition, which did not show breach of guardianship bond, is not ground for reversal, where special defenses set up by appellant's answer and undisputed evidence show that they do not claim to have paid appellee's demand, but assert exemption from liability on other grounds.

**12. TRIAL ⬥⟳350(1)—ISSUES NOT SUPPORTED BY EVIDENCE—SUBMISSION.**

Contention, in action on guardian's bond, that charge was upon the weight of the evidence, because it failed to submit value of certain items of property turned over on prior accounting, will be overruled, where appellants point out no evidence showing that such items were of any greater value than that at which they were accepted by plaintiffs.

**13. TRIAL ⬥⟳351(2) — SPECIAL ISSUES — REQUEST IN WRITING.**

Where case is submitted upon special issues, failure to submit an issue does not present a ground of reversal, unless its submission has been requested in writing by the complaining party, in view of Rev. St. 1911, art. 1985.

**14. TRIAL ⬥⟳350(3)—SPECIAL ISSUES—SUBMITTING MIXED QUESTION OF LAW AND FACT.**

Issues submitting question as to amount of loss sustained by plaintiffs against D. as guardian, and as executor and trustee, held properly refused, as calling for a conclusion upon a mixed question of law and fact.

**15. TRIAL ⬥⟳350(8)—SUIT ON BOND—SPECIAL ISSUES.**

In suit on guardianship bond, where undisputed evidence showed that guardian had failed to account for guardianship fund, there was no necessity of submitting issue as to amount which had been lost by guardian as executor and trustee.

**16. TRIAL ⬥⟳350(3) — SPECIAL ISSUES — IMPROPER EXPENDITURE OF FUNDS — LIABILITY.**

Where probate court never authorized guardian to expend any part of guardianship fund, and guardian had ample funds as executor and trustee to educate and maintain wards as he was directed to do under will, question as to amount expended by guardian for maintenance and education was immaterial, in suit on the guardianship bond, and was properly not submitted.

**17. JUDGMENT ⬥⟳485—VOID ORDERS OF PROBATE COURT—COLLATERAL ATTACK.**

Order of probate court, divesting itself of supervisory control of guardianship estate, being a nullity, was subject to collateral attack.

**18. TRIAL ⬥⟳350(3)—SUIT ON BOND—SPECIAL ISSUES.**

In suit on guardianship bond, held, that court properly refused questions submitting in substance whether money collected by guardian as such had been turned over to plaintiffs, in accounting suit brought against him as executor and trustee.

**19. GUARDIAN AND WARD ⬥⟳182(6)—SUIT ON BOND—BURDEN OF PROOF.**

In suit on guardianship bond, defendants had the burden of showing that the guardian had accounted for the guardianship fund.

Harper, C. J., dissenting in part.

Appeal from District Court, El Paso County; Ballard Coldwell, Judge.

Suit by Willard W. White and others against W. C. Davis and others. Judgment for plaintiffs, and defendants John M. Wyatt and T. M. Wingo appeal. Affirmed.

Gowan Jones, Chas. H. Veale, Lea, McGrady & Thomason, and John L. Dyer, all of El Paso, for appellants.

Jones, Jones & Hardie and Winter, McBroom & Scott, all of El Paso, for appellees.

### Statement of Case.

HIGGINS, J. Henry Lee Davis died testate on August 10, 1906, leaving three minor daughters, viz., Blanche, Maggie, and Irma. By his will he left his estate to these children, but appointed his brother, W. C. Davis, executor and trustee of his estate, without bond, and directed that no action be taken in the probate court except to probate the will

---

⬥⟳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

and return an inventory, appraisement, and list of claims. This will was probated, and W. C. Davis qualified as executor and trustee of the estate, and assumed control thereof. Under the terms of the will he was vested with full management and control of the estate during the minority of the girls, and given full authority to provide for their maintenance and education out of the estate. The net value of the estate was approximately $70,000. There was a life insurance policy for $2,000 payable to the girls. W. C. Davis was appointed guardian of their estates by the county court of El Paso county and qualified as such. As such guardian, he collected the amount of the policy. The only property coming into his hands as guardian was the proceeds of this policy. John M. Wyatt and T. M. Wingo were the sureties upon the guardianship bond.

Prior to the filing of the present suit on February 14, 1917, Blanche and Maggie became 21 years of age and had married. Irma is still a minor and unmarried. On June 19, 1916, a judgment was rendered in the district court of El Paso county, in favor of Blanche, Maggie, and Irma, against W. C. Davis, upon an accounting and settlement of the estate which he, as executor and trustee, was holding for them. In that suit, Blanche and Maggie were joined by their respective husbands, and Irma sued by her guardian, the Texas Bank & Trust Company. The fund of $2,000 received by Davis as guardian was excepted from the operation of the decree and left for future adjudication. The proceeding in the county court, wherein the will was probated and W. C. Davis appointed executor and trustee, was numbered 929. The guardianship proceeding in that court was numbered 982. On July 21, 1908, in cause No. 929, upon the petition of Davis, as executor, an order was entered that cause No. 982 be merged in cause No. 929, and "that W. C. Davis, guardian, trustee, and executor, continue to manage said estate heretofore handled under cause No. 982, but that hereafter he handle the same in his capacity as executor, trustee, and guardian in this cause, without the necessity of making further reports, except as is provided in the will." After the entry of this order, Davis made no further report in the guardianship proceeding, and has never made any final settlement with his wards in respect to the guardianship fund. No action of any kind in cause No. 982 appears to have been had, after the entry of said order, until March 27, 1916, upon which date the following proceedings were had:

(1) Davis filed an instrument stating that he wished to resign as guardian of the estate of Irma Davis, and offered to file such account of the condition of the estate of the minor and of his guardianship as might be required by law.

(2) Blanche and her husband filed a petition stating that Irma was then 15 years old, and had no guardian of her estate; her former guardian, Davis, having resigned.

(3) Waiver of citation by Irma, and selection of the Texas Bank & Trust Company as the guardian of her estate.

(4) An order was entered upon the said petition of Blanche and her husband, appointing said bank guardian of the estate of Irma. On March 28, 1916, the bank qualified as such guardian.

On February 14, 1917, the present suit was filed in the district court of El Paso county by Blanche and Maggie, joined by their respective husbands and by the bank, as guardian of Irma, against Davis, Wyatt, and Wingo, to recover upon the guardianship bond given by Davis. Succinctly stated, the pertinent allegations of the petition were: That on March 12, 1907, Davis was appointed guardian of the estates of Blanche, Maggie, and Irma, and on March 13, 1907, the said Davis gave the bond required by law and duly qualified, and that the bond which he filed was as follows: (Here is copied verbatim the guardianship bonds, with signatures of Davis, Wyatt, and Wingo appended thereto.) That on March 22, 1907, Davis collected the $2,000 belonging to the estates of the minors, and thereafter used and appropriated the same to his own use. That at all times Davis, in his capacity as trustee and executor, had sufficient funds for the education and maintenance of his wards, and that no part of the estate of his wards was necessary for such purpose. That he had failed to loan the $2,000, as he could have done by reasonable diligence, and by reason thereof he and his sureties were liable to plaintiffs for the $2,000 collected by him, with interest. That Davis had failed to pay any part of the same to plaintiffs, and by reason of the failure of Davis to pay same, or account therefor, he, and Wyatt and Wingo as sureties on his bond, became liable and are indebted to each of the plaintiffs in the sum of $666.66, with interest, for which judgment was prayed. Judgment was rendered in favor of plaintiffs. Wyatt and Wingo appeal. Any other facts pertinent to the decision will be indicated by the opinion.

### Opinion.

[1, 2] The overruling of appellant's general demurrer is first assigned as error. Among the objections urged to the sufficiency of the petition there are two, which, as to the sureties, are regarded as good, namely: The failure to allege the execution of the bond by Wyatt and Wingo, and breach thereof by them. Notwithstanding the liberal rule applying in testing the sufficiency of a petition as against a general demurrer, the petition as against the sureties is fatally defective in these particulars. There is no allegation

that they made or in any wise executed the name, nor to show refusal upon their part to comply with the terms thereof. Copying the bond in the petition, and the allegation that Wyatt and Wingo were indebted and liable to the plaintiffs, do not show execution of the bond by them, nor breach thereof. The authorities so hold. Jennings v. Moss, 4 Tex. 452; Gray v. Osborne, 24 Tex. 157, 76 Am. Dec. 99; Sneed v. Moodie, 24 Tex. 159; Parr v. Nolen, 28 Tex. 798; Whitaker v. Record, 25 Tex. Supp. 382; Brackett v. Devine, 25 Tex. Supp. 195; Grant v. Whittlesey, 42 Tex. 320; Cotton v. Thompson, 159 S. W. 455; Merchants', etc., v. Williams, 181 S. W. 859; Carter v. Olive, 128 S. W. 478. In Parr v. Nolen, supra, Chief Justice Moore remarked that these rulings appeared somewhat technical, but followed same. This court cannot ignore the authorities cited, and in deference thereto it is constrained to hold that the petition is insufficient as to the sureties.

[3] By the second assignment, the sufficiency of the petition is questioned as against a special exception. This exception was presented upon the theory that, in order to maintain suit in the district court upon a guardian's bond, it must be shown as an indispensable requisite of the district court's jurisdiction that the probate court had required final settlement by the guardian, or that the probate court had judicially found the guardian in default, ordered him to settle, and he had failed to do so, or must otherwise show that the wards had invoked all the remedies possessed by them in the probate court. This question has been several times before the courts, and it is held that the wards may proceed by an independent suit in the district court to obtain proper relief against the guardian and his bondsmen. There is no merit in the exception. Moore v. Hanscom, 103 S. W. 668; Carpenter v. Soloman, 14 S. W. 1074; Timmins v. Bonner & Long, 58 Tex. 554; Francis v. Northcote, 6 Tex. 185; Fort v. Fitts, 66 Tex. 593, 1 S. W. 563; Key v. Key, 167 S. W. 173.

[4] Error is assigned to the admission in evidence of the proceedings of March 27 and 28, 1916, culminating in the appointment and qualification of the Texas Bank & Trust Company as guardian of Irma Davis. The bank sued as guardian, and there was no plea putting in issue its capacity so to sue. So there was no necessity for any proof on that point; hence it is unnecessary to inquire whether the evidence was properly admitted. Article 1906, subds. 2, 3, R. S.; Dolson v. De Ganahl, 70 Tex. 620, 8 S. W. 321; Kaack v. Stanton, 51 Tex. Civ. App. 495, 112 S. W. 706.

Neither is there any error presented by the ruling on evidence complained of in the fifth assignment.

[5] Various other assignments complain of the court's charge, refusal to submit requested issues, and that the judgment against the sureties is contrary to the law and evidence. Without undertaking to discuss these assignments in detail, but in view of a retrial, we will indicate our views upon the legal questions involved as applied to the facts presented by this record. In the first place, no importance is attached to the order of July 21, 1908. By this order the probate court undertook to completely divest itself of the supervisory control over the estate in guardianship which was vested in it under the Constitution and statutory law. The effect of this order was to turn over to Davis, as executor and trustee, the management and disposition of the guardianship fund, leaving him absolutely uncontrolled by the probate court in respect thereto. We think it clear that the probate court had no authority to divest itself of its supervisory control over the estate and deprive the wards of their right to have their estate administered under its control. The order was a nullity. Wheeler v. Duke, 29 Tex. Civ. App. 20, 67 S. W. 911; Prince v. Ladd (Sup.) 15 S. W. 159.

[6] While this is true, yet if it can be shown that Davis, in the suit in the district court or otherwise, and taking into consideration the consequences resulting from commingling of funds, as hereafter indicated, has in whole or in part accounted to his wards, for this guardianship fund, then manifestly to the extent of such accounting his sureties are protected; and this is true, notwithstanding the decree in the accounting suit excepted the guardianship fund from its operation. Wyatt and Wingo were not parties to that suit, and neither their rights nor their liabilities are affected thereby. In this connection it is noted that Davis, as executor and trustee under the will of his brother, came into possession of an estate of the net value of over $70,000. Under the terms of the will he was given management and control thereof, and vested with authority and directed to educate and maintain the minor daughters out of this estate. He was authorized to do all this free from the control of the court. In addition to the estate mentioned, he, as executor and trustee, under a void order of the probate court, took possession of the guardianship fund. These two funds and his personal funds he commingled, and the identity of the $2,000 was lost. From the very inception of his trust under the will he disregarded the terms thereof, and by the district court has been made to account to his cestuis que trust by turning over to them a large amount of property which he had acquired in his own name with trust funds; and in the decree of the district court a personal judgment has been rendered against him in favor of the daughters for $13,643.03, which remains unpaid.

[7] Davis, as executor and trustee, had ample funds to educate and maintain the children, and his brother's will expressly authorized and directed him to use the trust estate for that purpose. There is no pretense that the probate court ever authorized the expenditure of any of the guardianship funds for any purpose. Having ample funds as executor and trustee to educate and maintain the children, and charged under the will with the duty to use sufficient of those funds for that purpose, and having no authority from the probate court to so expend any part of the guardianship fund, it follows that neither Davis, as guardian, nor his sureties, are entitled to claim any credit for any of the guardianship fund which may have been expended in educating and maintaining the children, if, in fact, any was so expended.

For the commingling of the guardianship money by Davis with the trust estate and his personal funds there is no excuse. So far as the guardianship fund is concerned, the sureties must suffer the consequences resulting from this wrongful act. So, upon retrial, the sureties are entitled to no credit in respect to the accounting which Davis has been compelled to make to the plaintiffs, unless they can show that Davis, in his accounting with the plaintiffs, has surrendered to them property and actually paid in money sufficient to account for the entire trust estate and guardianship fund. No issue in respect thereto should be submitted to the jury, unless competent evidence be adduced to present such issue.

Reversed and remanded.

### On Rehearing.

[8] In their motion for rehearing, appellees call the court's attention to the rule that, in considering the sufficiency of a petition attacked by general demurrer, the answer may be looked to and omissions in the petition cured by allegations of the answer. This rule is well established and has been applied by this court. Hotel Dieu v. Armendariz, 167 S. W. 182. Appellees, in their motion, also call our attention to the answer, and point out an averment therein sufficiently showing that Wyatt and Wingo signed the bond as sureties. This cured the want of an allegation in the petition that Wyatt and Wingo executed the bond.

[9, 10] As to the ruling that the petition was demurrable because of its failure to show a breach of the bond by the sureties, appellees seem to misunderstand our holding. It was not held that it was necessary to show a demand of the sureties to perform the conditions of their bond. When an obligation arises upon a contract, it becomes the legal duty of the obligor to perform his obligation. If he fails so to do, he has breached his obligation; and this is true, though no demand has been made of him. An allegation that an obligation arose does not necessarily imply that the obligor has failed to discharge the same. So the allegation that Wyatt and Wingo became liable and indebted to plaintiffs on the bond does not imply a failure on their part to discharge their liability and indebtedness. In holding that the petition in this case did not show a breach by the sureties was meant that it did not show a refusal or failure on the part of the sureties to discharge any liability or indebtedness which it was alleged had arisen.

[11] But, however this may be, it is concluded, upon two authorities cited by appellees in their motion (Rains v. Wheeler, 76 Tex. 390, 13 S. W. 324; Merchants', etc., v. Williams, 181 S. W. 861), that the case should not be reversed because of the absence of an allegation in the petition showing breach of the bond. The question arises simply upon the action of the court in overruling the general demurrer. In Rains v. Wheeler, supra, the court refused to reverse upon an assignment complaining of the overruling of a general demurrer, assigning as its reason that no prejudice accrued to the defendant. Merchants', etc., v. Williams, supra, followed this case, and refused to reverse where a general demurrer had been improperly overruled, saying that the omission in the petition did not contribute in any manner to the judgment rendered. In the case at bar the special defenses set up in appellants' answer and the undisputed evidence shows that they do not claim to have paid appellees' demand, but assert exemption from liability upon other grounds. Upon the whole record it is very plain that the omission from the petition of the allegation in question did not in any wise contribute to the judgment rendered, that no possible prejudice has thereby accrued to appellants, and upon the authority of the cases cited it is now held that the improper overruling of the demurrer is not ground for reversal. We do not undertake to announce any general rule upon this subject, but limit the holding in this case to the instant facts. In this connection, it is proper to say that Chief Justice Harper has at all times been of the opinion, under the authority of Milliken v. Callahan County, 69 Tex. 205, 6 S. W. 681, that the petition was sufficient within itself. He did not dissent from the original holding in the case, for the reason that he thought the case should be reversed upon the eleventh assignment.

There were various other reasons urged why the general demurrer should be sustained, but, with the exception noted, the pleadings are regarded as sufficient.

In view of the conclusion now reached as to the sufficiency of the pleadings, it becomes necessary to pass upon those assignments not specifically mentioned in the original opinion. The case was tried before a

jury and submitted upon special issues. The charge of the court is as follows:

"This case will be submitted to you on special issues, and you are requested to return your answers to the following questions:

"The property to which the two questions propounded in this charge refer is the following: [Here follows a description of certain property which Davis was required to surrender to appellees in the accounting suit in the district court.]

"The total value at which the same was transferred by W. C. Davis, and received by plaintiffs herein, was $30,900.

"Question No. 1. Was the value at which W. C. Davis transferred the above property to the plaintiffs, by virtue of the orders and stipulations in cause No. 11817 in the Forty-First district court of El Paso county, Texas, a fair and reasonable valuation of same? [Answer: No.]

"Question No. 2. What was the fair and reasonable value of the property described above at the time the same was transferred by W. C. Davis to the plaintiffs herein, on the 19th day of June, 1916? [Answer: $36,400.]"

[12] Appellants complain that the charge was upon the weight of the evidence, because it failed to submit to the jury the value of certain other items of property which Davis had likewise been required to surrender to appellees in the accounting suit. It seems that these other items had been accepted by appellees at an agreed value in the accounting suit. There are two replies to this assignment:

In the first place, appellants point out no evidence that these items were of any greater value than that at which they were accepted by appellees in the accounting suit. Unless there was evidence to show that the items were of greater value than the value at which they were so accepted, then there was no issue to submit.

[13, 14] In the second place, this case was submitted upon special issues, and in such cases the failure to submit an issue does not present a ground of reversal unless its submission has been requested in writing by the complaining party. Article 1985, R. S.

Error is assigned to the refusal to submit the following issues:

"Question No. 1. What amount of loss did W. C. Davis, as executor and trustee of the estate of H. L. Davis, make or sustain?

"Question No. 11. What was the total amount of loss sustained by plaintiffs against W. C. Davis as executor and guardian?

"Question No. 16. What was the amount of loss sustained by plaintiffs against W. C. Davis as guardian?

"Question No. 19. What amount of loss, if any, was sustained by plaintiffs against W. C. Davis:

"A. As guardian?

"B. As executor and trustee?

"State both amounts, and in so answering same, let your answer be as follows:

"Answer A. The amount of loss sustained by plaintiffs against W. C. Davis as guardian is $————.

"Answer B. The amount that was sustained by plaintiffs against W. C. Davis as executor and trustee is $————.

"Question No. 14: Did W. C. Davis as guardian expend annually upon plaintiffs herein, while they were minors, for their education and maintenance, a sum equal to two hundred ($200) dollars per annum? Answer Yes or No.

"Question No. 15. Did W. C. Davis as guardian expend for the maintenance and education of plaintiffs herein while they were minors, and upon each of them, a sum equal to one-third of two hundred ($200) dollars annually?

"Question No. 24. If you find that any part of the $2,000 collected by the defendant W. C. Davis as guardian was turned over to the plaintiffs herein, either in money or property, at the time of the final accounting in the suit in the district court or prior thereto, did the plaintiffs have notice or knowledge thereof?"

Questions 1, 11, 16, and 19 were properly refused, because they called for a conclusion upon a mixed question of law and fact. Watson v. Patrick, 174 S. W. 632; Rogers v. Broadnax, 24 Tex. 538; Gresham v. Chambers, 80 Tex. 544, 16 S. W. 326. The requested issues were not accompanied by any instruction upon the law by which the same could have been intelligently answered. We do not see how the jury could have intelligently answered the same, without appropriate instructions to guide it in determining the "amount of loss."

[15] We are of the further opinion that it was immaterial what amount had been lost by Davis as executor and trustee; and the majority are of the further opinion that the undisputed evidence shows, under the rule announced in the original opinion, that Davis had failed to account to appellees for the guardianship fund and that it has been wholly lost to appellees. Hence there was no necessity to submit any question to the jury in that respect.

[16] As to questions 14 and 15, these also were properly refused as immaterial under the evidence. As was pointed out in the original opinion, the probate court never authorized the expenditure of any part of the guardianship fund, and Davis had ample funds as executor and trustee to educate and maintain the children, and under his brother's will was charged with the duty to use sufficient of those funds for that purpose. Furthermore, in the accounting suit he was allowed credit for $23,521.20, being all that he claimed to have expended in that behalf.

Question 24 was immaterial. If Davis, under the rule stated in the original opinion, has accounted to appellees for any part of the guardianship fund, then his sureties to that extent would be protected, regardless of any question of notice to appellees.

[17] Assignments 13, 14, 15, and 16 assert that the judgment is contrary to the law and the evidence. Upon the facts stated and rule announced in the original opinion, these assignments are regarded as without merit.

As was therein stated, the consolidation order of the probate court of July 21, 1908, is regarded as a nullity. As such it is subject to collateral attack.

[18] Under the eleventh assignment, complaint is made of the refusal to submit four questions, viz.:

"Question No. 21. Was any part of the $2,000, collected by the defendant W. C. Davis as guardian, turned over to or has it been received, by the plaintiffs herein, either in money or property, at the time of the final accounting in the suit in the district court, or prior thereto? Answer Yes or No.

"Question No. 22. If you have answered the above and foregoing question in the affirmative, what amount, either in money or property, was so turned over by him?

"Question No. 22a. Did the $2,000, or any part thereof, which was collected by the defendant W. C. Davis as guardian, find its way into the funds or property turned over by W. C. Davis to the plaintiffs herein in the final accounting in the suit in the district court or prior thereto? Answer Yes or No.

"Question No. 23. If you have answered the foregoing question in the affirmative, what amount in funds or property was turned over by said W. C. Davis?"

The majority are of the opinion that the refusal to submit these questions presents no error. The record discloses these undisputed facts: When the probate court made the order of July 21, 1908, Davis commingled the $2,000 with the funds which he held as executor and trustee. He testified that it lost its identity, and he had never been able to trace it since. He admitted that, when he was required by the district court to render an accounting of his trust, he had used $40,-500 of trust funds in his personal affairs; that he had invested the same in various items of property. This property he was required to surrender to appellees by the judgment rendered in the accounting suit. He received credit for the property so surrendered. He also received credit for $23,521.20 for moneys expended in the maintenance and education of appellees; also $3,282.73 expenses incurred in the management of the estate. He was allowed all he claimed to have expended for expenses, maintenance, and education. After allowing these credits, there was still a balance due of $13,643.03, for which judgment against him was rendered and is still unpaid. A part of the property which he surrendered was taken at an agreed value, and he testified the valuation was fair, and there is no evidence to the contrary. The remainder was taken at an appraised value of $30,900. This is the property described in the foregoing charge of the court. In this suit the jury found that the fair and reasonable value of that property was $36,400, and to this finding appellants make no exception. The difference between $36,-400 and $30,900 is $5,500.

[19] As the sureties were not parties to the accounting suit, they were not bound by the appraised value of $30,900; and in this suit, upon the finding of the jury, it must be assumed, in so far as the rights of the sureties are concerned, that Davis was entitled to an additional credit of $5,500 for the surrendered property. Deducting this amount from the $13,643.03 still leaves a balance of $8,143.03. On account of the commingling of funds, it is wholly impossible to say how much of it represents the guardianship fund. The commingling was unlawful. The appellees were minors, and had no way to prevent it. The appellants, by their bond had guaranteed the faithful discharge by Davis of his duties as guardian. They must assume any loss resulting from the act of their principal in commingling the guardianship fund with the other trust fund. It is clear upon the facts stated that Davis has not accounted to appellee for all the funds which he commingled. There is at least a balance due of $8,143.03. The burden rested upon appellants of showing that he had accounted for this $2,000, and there is no evidence to trace it, or any part thereof, into the property which Davis surrendered in the accounting. He testified that he lost all trace of it, and there is no evidence to the contrary. Upon the evidence, it would have been impossible for the jury to have answered the questions noted above, and the majority is of the opinion that it was not error to refuse their submission. For this reason, the eleventh assignment is overruled.

Chief Justice HARPER does not concur in this conclusion, being of the opinion that the questions should have been submitted and the case reversed on account of such failure. Judge HARPER states his views as follows:

"I agree that the order of the probate court consolidating the two estates was a nullity, in that it could not have the effect to discharge the guardian, nor to relieve the sureties upon his bond, but leaves Davis in the position of having mingled the funds without any lawful authority. The initial idea of confusion of goods is that there has been such an intermixture of goods owned by different persons that the property of each can no longer be distinguished. In this case, the trust funds and the guardianship funds all belonged to the plaintiffs in equal portions, and the act of depositing the guardianship funds in bank in the trust account could not, of itself, have the effect to lose its identity; nor does the fact that they were invested in the property, without being able to say into which piece of property it went, have this effect, for the reason that in the accounting suit the plaintiffs have accepted this very property, under Davis' testimony, and there is none to the contrary. The court in the latter case determined that there was not enough property turned over to settle the trust fund, and in addition gives judgment for a definite amount of money. This decree binds the guardian, but not the sureties, because they were not parties thereto. It seems to me that the sureties are entitled to have the guardianship funds first looked after, instead

of the trust fund consuming the guardianship fund.

"The question here is: Did any of the funds held by Davis as guardian find their way into the funds or property turned into and accepted by plaintiffs in the accounting suit? If so, then the sureties upon his bond should not in this suit be adjudged to again pay it to them. The appellant requested a special issue to be given to the jury to the effect: Did the funds held by Davis as guardian find their way into the funds or property turned into the plaintiffs in the accounting suit? The court refused to submit the issue and this is assigned as error. Davis has testified that it all went into it and there is no evidence to the contrary. This I consider reversible error, for under the pleadings and facts it became a question for the jury to determine whether the guardian had accounted, in whole or in part, to his wards for the moneys sued for, and if the jury should so determine the sureties upon the guardian's bond should have credit for such amount in this suit. America Bonding Co. v. Logan, 132 S. W. 894; Fidelity D. Co. v. Schelper, 83 S. W. 871.

"In passing upon this assignment of error, the majority opinion holds: 'It is clear upon the facts stated that Davis has not accounted to appellees for all the funds which he commingled.' In my opinion, we are not in a position now to determine that question, because the jury were not permitted to pass upon it. I cannot give my assent to that part of the majority opinion which holds that, if Davis be given credit for the $5,500, which the jury found was the value of the property over and above what it was taken at in the accounting suit, he would still not have accounted for the $13,643.-03, for which they took judgment in the other suit, for, with the property taken for $5,500 less than it was worth, they have a judgment for that much more than they are entitled to, and we are not justified in presuming that Davis will not pay the judgment as rendered, and, if not, then the $5,500 is subject to the guardianship account, and the sureties should have their credit."

Upon the view of the majority, it follows that the motion for rehearing should be granted, and the cause affirmed.

It is so ordered.

HARPER, C. J., dissents in part.