No. 2522.

MIKE PARRISH v. JOHN H. JACKSON.

1. POSSESSOR IN GOOD FAITH.—To constitute one a possessor in good faith, he must not only believe that he is the true owner, and have reasonable grounds for that belief, but he must be ignorant that his title is con tested by one having or claiming a better right, unless he has strong grounds to believe that the adverse claim is destitute of legal foundation. If, by investigating the records of his county, he can ascertain that his own title, which contains only a special warranty, is worthless, and he improves the land, he can not, on eviction of the true owner, be regarded as a possessor in good faith, and be entitled to compensation for his improvements.

2. DESCRIPTION.—A deed conveying many tracts of land attempted to convey land by the following description: "Three hundred and twenty-four acres, Milton Sweeney tract, in Polk county, valued at one hundred and seventy-one dollars," *held* that the description considered in connection with other deeds in the line of the claimant's title, which described more specifically the survey, sufficiently identified the land.

APPEAL from Polk.    Tried below before the Hon. Edwin Hobby.

*Hill & Corry* for appellant:    On their proposition that pay for improvements depends on good faith and not on title, cited: Dorn v. Dunham, 24 Texas, 366; Bond v. Hill, 37 Texas, 627; Traylor v. Lide, Tyler term, 1887; Sartain v. Hamilton, 12 Texas, 222; Hutchins v. Bacon, 46 Texas, 408.

Can recover for improvements made under a quit claim deed, Sedg. & Wait, Trial of Title to Land, second edition, 528; Idem, sec. 695.

The description of this land in the deed of John H. Jackson and James Jackson, executors of Hugh Jackson, to James S. Jackson, was not sufficient.

No brief for appellee on file.

WILLIE, CHIEF JUSTICE.    John H. Jackson brought this action of trespass to try title to recover of Mike Parrish and J. J. Parrish three and two-thirds acres of land, part of the Milton Sweeney survey in Polk county.    Defendants pleaded not guilty,

and suggested improvements in good faith. Plaintiff recovered the land sued for, and Mike Parrish alone appealed.

Two points only are insisted on in this court. One is that the appellant having purchased and improved the land claimed by him in good faith, believing that he was getting the paramount title, was entitled to a judgment for the value of his improve-ments. The appellant claimed title through a deed made by Leon, Hyman and Sylvain Blum to J. J. Parrish, and a deed made by J. J. Parrish to himself. Neither of these deeds contained any other than clauses of special warranty, and there is noth-ing in the evidence to show that the Blums had any title what ever to the land at the time their deed was executed. It does show that the appellee's immediate grantee had, at that time, a perfect chain of title from the government on record in Polk county, and that the appellant did not examine the records be-fore buying or improving. He says that he wrote to plaintiff about his title, but could get no satisfaction from him, and in quired of the tax assessor and learned that Blum alone rendere the land for taxes. It was proved, however, that they were paid by the plaintiff. Whether these inquiries took place before or after the appellant purchased or improved is not made clearly to appear. Nor is this important.

To constitute one a possessor in good faith he must not only believe that he is the true owner, and have reasonable ground for that belief, but he must be ignorant that his title is contested by any person claiming a better right. (Dorn v. Dunham, 24 Texas, 380.)

It is said in the case cited that there are cases where, though aware of the claim, the possessor may have reasonable and strong grounds to believe such claim to be destitute of any just or legal foundation, and so be a possessor in good faith. Here the appellant had every reason to believe that he was not the true owner; and, upon making the investigation of records which it was his duty to make before improving, he would have easily dis-covered that he was not, and that Jackson was, the true owner, and that the parties from whom he bought had no shadow of title. But he refused to inform himself from the records, and relied on a deed from persons with no appearance of title, which deed did not bind his vendors to warrant the title conveyed against Jackson or any one else. This was in itself a suspicious circum-stance, and should have placed Parrish upon guard and caused him to investigate as to the character of title he was getting

---

---

from his vendor. It is very clear from the evidence that he got no title whatever, and that he had no reasonable grounds to believe that he had, and none from which he could draw the inference that Jackson's was without foundation, or in the least defective.

It is true that he says he bought in good faith, believing that he was getting a good title. But this was not sufficient. He should have shown that he had reasonable foundation for the belief, and good faith could not exist where every fact before the appellant showed clearly that he was getting no title at all. We think this point not well taken.

The other point is that the evidence does not identify the three hundred and forty-two acres of land mentioned in the deed from John H. and James Jackson, executors of Hugh Jackson's will, to James Jackson, as the land in question in this cause. The deed describes it as "three hundred and forty-two acres Milton Sweeney tract in Polk county, valued at one hundred and seventy-one dollars." This deed conveys a great many tracts of land belonging to Hugh Jackson's estate, described them in short in the above manner. This description, taken in connection with that contained in other deeds in the line of Jackson's title, we think, sufficiently identifies the land. It is described in the petition by metes and bounds. It was proved that the patent to Sweeney, as assignee of White, vested in him the land in question, i. e., the land described in the petition. Then a deed from Sweeney and one from White are stated to have vested the same land in Hugh Jackson. Then the executors of Hugh Jackson conveyed the three hundred and twenty-four acres granted as above, and it does not appear that there was title to any other three hundred and twenty-four acres granted to Sweeney in the Hugh Jackson estate. It is, therefore, perfectly apparent that by the land described in the deed of the executors, none other could have been meant than that described in the petition, and to which Hugh Jackson derived title through mesne conveyances from the government.

We see no error in the judgment, and it is affirmed.

*Affirmed.*

Opinion delivered February 5, 1888.