## HY. KAACK ET AL. v. WM. E. STANTON.

Decided June 27, 1908.

**1.—Trespass to Try Title—Improvements in Good Faith—Pleading.**

A plea of improvements in good faith in a suit of trespass to try title alleged, in substance, that the defendants acquired the land in controversy by deeds duly executed and for a valuable consideration, and that they believed and had good reason to believe that they had acquired a good and valid title thereto, and that the improvements were made on the land in good faith and depending on their title thereto during the time they had possession. Held, insufficient under the requirements of the statute.

**2.—Same—Same.**

To constitute a defendant in trespass to try title a possessor in good faith he must not only have believed that he was the true owner and have grounds for such belief but he must have been ignorant that his title is contested by one claiming a better right, and he must allege facts that would justify the belief in the validity of his title.

**3.—Limitation—Unsound Mind—Presumption.**

In avoidance of a plea of limitation, plaintiff plead that he was of unsound mind at the time adverse possession of the land began and had remained in such condition ever since. The court charged the jury that when a man

becomes chronically of unsound mind he is presumed to continue in such condition until the contrary is proven, and that when one is adjudged to be of unsound mind he is presumed to continue in that condition until the contrary is proven. Held, not subject to the objection that it was misleading. Limitation does not run against a person of unsound mind, and in order to suspend the statute an adjudication of insanity is not necessary.

**4.—Unsound Mind—Definition—Charge.**

Upon an issue of limitation the court charged the jury, in effect, that a person is to be deemed of unsound mind when he has not the ability to transact the ordinary affairs of life, to understand their nature and effect, and exercise his will in relation to them. Held, not subject to the objection, in the light of all the evidence, that the jury may have understood the court as referring to physical as well as mental ability.

**5.—New Trial—Newly Discovered Evidence—Diligence.**

A motion for new trial on the ground of newly discovered evidence, considered, and held insufficient in the matter of diligence in the discovery of the alleged newly discovered evidence. · The discretion of a trial court in passing upon such a motion will not be revised unless an abuse of the discretion is shown.

**6.—Pleading—Capacity of Plaintiff—Practice.**

A plaintiff suing as guardian need not prove his appointment as such unless the fact is denied by proper plea by the defendant.

**7.—Assignment of Error—Insufficiency.**

An assignment of error which presents two distinct questions will not be considered by an appellate court, and the fact that the assignment is followed by two propositions intended to explain each of the points presented, will not supply the place of a valid assignment.

**8.—Depositions—Objections—Practice.**

An objection to testimony by deposition that the answers of the witness were not responsive to the questions propounded to him, goes to the manner and form of taking, and should be made before trial and notice given to the opposite party.

**9.—Evidence—Insanity—Opinions.**

A witness who knows the facts and has testified to them may express his opinion founded upon his .own knowledge, as to a person's mental condition.

Appeal from the District Court of Matagorda County. Tried below before Hon. Wells Thompson.

*Gaines & Corbett,* for appellants.

*Willett Wilson, Lind, Holland & Austin* and *Wilson & Dabney,* for appellee.

McMEANS, ASSOCIATE JUSTICE.—This suit was instituted in behalf of Wm. E. Stanton, alleged to be *non compos mentis,* by his guardian, Mary J. Worthen, and by Raymond Fretwell and Fannie Fretwell, by their guardian, John Fretwell, against Hy. Kaack, Mrs. W. K. Kaack, *feme sole,* Dave Kaack, Anna Kaack, John Kaack, F. S. Sherer and J. F. Holt, in the ordinary form of an action of trespass to try title, for 320 acres of land in Matagorda County, patented to the heirs of Wm. G. Ewing, and for damages. Defendants answered by plea of not

guilty, and also pleaded the statute of limitations of three, five and ten years, and for the value of the improvements made in good faith by them on the land. They also vouched in as party defendants E. P. Layton, C. I. Layton, F. P. Layton, I. R. Layton, M. L. Layton, M. F. Wilson, R. H. Wilson, S. E. Tyler and E. L. Tyler, alleged to be the heirs of M. E. Layton and Fletcher Layton from whom defendants' ancestor purchased the land by general warranty deed, and prayed for judgment against the vouched in defendants in the event judgment for the land should be against them.

The plaintiffs by supplemental petition specially excepted to that part of defendants' answer setting up improvements in good faith, and pleaded that Wm. E. Stanton was of unsound mind and had been since his infancy, and that he was of unsound mind at the time and before defendants took possession of the land in controversy and that as to him the statute of limitations did not apply. He claimed an undivided half interest in the land.

The plaintiff, John Fretwell, guardian of Raymond and Fannie Fretwell, took a non-suit; and after the evidence was all in the court directed a verdict for all the vouched in defendants, and as to this action the appellants make no complaint.

The case was tried before a jury and a verdict was rendered for plaintiff, upon which judgment was entered in his favor for an undivided one-half of the land, and for the sum of $785.55 found by the jury for rents of the land. Plaintiff entered a remittitur of this sum. Defendants filed a motion for a new trial which was overruled, and in a proper manner brings the case before us on appeal.

The court sustained plaintiff's special exception to defendants' plea of improvements; and this action of the court is the basis of appellants' first assignment of error. The plea is as follows:

"Now come the defendants in the above numbered and entitled cause by their attorneys, and represent to the court that they and those under whom they claim have had adverse possession, in good faith, of the premises in controversy and described in plaintiff's petition, for more than one year next before the commencement of this suit; that all of said land was acquired by deeds duly executed and for valuable considerations paid by the vendees, and the defendants herein, being said vendees and their heirs, believed and had good reason to believe that they thereby acquired a good and valid title thereto.

"And defendants further say that they and those under whom they claim have made permanent and valuable improvements on said land and premises in good faith and depending upon their title thereto, during the time they had such possession, as follows." Then follows the various items of improvements with the cost or value of each, aggregating $3,050.

The assignment cannot be sustained. The statute provides that the defendant may allege that he and those under whom he claims have made permanent and valuable improvements on the land sued for during the time they have had such possession, stating the improvements and their value, respectively, "and stating also the grounds of such claim." Art. 5277.

The only grounds of the claim asserted by appellants are that the land was acquired by them by deeds duly executed and for a valuable consideration, and that they believed and had good reason to believe that they had acquired a good and valid title thereto, and that the improvements were made on the land in good faith and depending on their titles thereto, during the time they had possession.

This allegation, we think, does not meet the requirements of the statute that the grounds of the claim shall be stated. To constitute appellants possessors in good faith they must not only have believed that they were the true owners and have grounds for that belief, but they must have been ignorant that their title is contested by one claiming a better right, unless they had strong grounds to believe that the adverse claim is destitute of legal foundation. (Parrish v. Jackson, 69 Texas, 615); and it was incumbent upon them to allege facts which would justify the belief in the validity of the title under which they claimed. Johnson v. Schumacher, 72 Texas, 338; Thompson v. Comstock, 59 Texas, 318; Holstein v. Adams, 72 Texas, 485; Riggs v. Nafe, 30 S. W., 707.

The second assignment complains of the action of the court in giving plaintiff's special charge No. 3, which is as follows: "The jury are charged that when a man becomes chronically of unsound mind he is presumed to continue in such condition until the contrary is proven. That when one is adjudged to be of unsound mind, then he is presumed to continue in that condition until the contrary is proved."

The objections to the giving of this charge are that there was no evidence that Stanton was chronically of unsound mind, and because he was adjudged to be of unsound mind long after defendants had taken actual possession of the land, and because the "coupling together of the two conditions set out in the charge" was calculated to and did lead the jury to believe that if Stanton was ever adjudged to be of unsound mind that he was necessarily in that condition at the time of the suit. As to the first contention, we find that the evidence justified the giving of the first part of the charge. There was testimony to the effect that Stanton was idiotic and had been so from his infancy, which antedated the commencement of the actual possession of the land by defendants. The other objections are without merit. Limitation did not begin to run against Stanton at the time actual possession of the land was taken by defendants if at that time he was of unsound mind, and the suspension of the statute in such case did not depend on whether or not Stanton had been adjudged insane. Nor could the jury have understood from the charge that if Stanton had been once adjudged of unsound mind that he was necessarily in that condition at the time of the trial, and this is especially true in view of the fact that at the instance of the defendant the jury were instructed that unless Stanton was of unsound mind before possession was taken by defendants and those under whom they claim, then limitation began to run against him from the day of taking such possession and continued to run as long as such possession was held; and further, that if Stanton had any lucid interval during the time defendants held possession, then limitation began to run against him from the time of such lucid interval. The assignment is overruled.

The action of the court in giving plaintiff's requested charge No. 4 is made the basis of appellants' third assignment of error. The charge instructed the jury, in effect, that a person is to be deemed of unsound mind, when he has not the ability to transact the ordinary affairs of life, to understand their nature and effect and exercise his will in relation to them. The objection is that a person might not have the ability to transact the ordinary affairs of life and yet be of sound mind; that the charge did not show that mental ability was meant and such meaning could not be presumed. In the connection in which the language is used it is inconceivable that the jury could have understood the court to have reference to physical ability. Nor is the charge subject to the further objection urged against it that it is upon the weight of the evidence. The assignment cannot be sustained.

The charge of the court upon the issue of limitation was sufficient, and the assignments attacking it are overruled. If defendants desired a fuller charge upon the subject they should have requested it.

The court instructed the jury that in the event they found for plaintiff their verdict should be as follows: "We, the jury, find for the plaintiff that he was of unsound mind at the time actual possession was taken of the land, and we further find for plaintiff for rents of the land —— dollars." The verdict was returned in the language of the charge, the jury writing in the blank the amount found by them as rents. The twelfth assignment complains that the court erred in receiving the verdict and entering judgment thereon for the reason that the verdict fails to find whether plaintiff was of unsound mind at the time actual possession was taken by the Laytons or by their vendee, Holt. The testimony conclusively shows that actual possession of the land was taken by the Laytons through their agent, Holt, in 1881 or 1882, and that Holt, as such agent, held the possession until 1888, when he purchased the land from the Laytons; and that thereafter he continued in possession under his conveyance from the Laytons. The court charged the jury that if Stanton was not of unsound mind at the time Holt took possession, to find for defendants; and the jury must have understood from this, and so found, that Holt's possession as agent for the Laytons was the possession meant. The assignment is overruled.

What we have before said disposes of appellants' eleventh assignment, which complains that the verdict is contrary to and unsupported by the evidence, in that there was no sufficient testimony to base the finding that Stanton was of unsound mind at the time Layton's possession began in 1881. The assignment cannot be sustained.

The twelfth assignment complains of the refusal of the court to grant to defendants a new trial in order to permit them to procure newly discovered evidence. This ground of the motion is supported by the affidavit of John W. Gaines, defendants' attorney, wherein it is stated that defendants had been diligent in looking up evidence in the case, "that they had written letters to various parties in Calhoun County, the former residence of the plaintiff, Stanton, and that from each of said parties they received letters stating they knew nothing with reference to Stanton and his mental condition about the time the defendants' vendors, Laytons, went into possession of the land in

controversy. It shows that these attorneys wrote letters to the county clerk of Calhoun County, requesting that they be furnished with certified copies of any and all proceedings to which Wm. E. Stanton was a party, and that in response thereto said clerk informed them that the only judgment of record relating to such matters was the appointment of J. M. Bickford as guardian of the estate of Wm. E. Stanton in 1887; that after the trial of this cause Mr. Proctor, of Victoria, had stated that he remembered litigation in Calhoun County in which Stanton was a party; that immediately said attorneys undertook to and did procure certified copies of such litigation, which are attached to the affidavit, and which show that on the 30th day of May, 1881, in the District Court of Calhoun County, Wm. E. Stanton was suing in his own right for the recovery of property; that on the 31st day of May, 1881, a judgment was taken by said Stanton in his own proper person.

The affidavit further shows that defendants are informed, and believe, that Leckie and Staten, who were the attorneys for Stanton in said litigation, would testify that said Stanton was of unsound mind when said suit was filed and judgment entered, and for some years thereafter; and that Stanton is a resident of New Braunfels, Texas.

Said affidavit further sets out that John W. Gaines, the attorney, had a conversation with Dolph Sterling, a reputable resident of Palacios, Texas, since the trial of this cause, in which the said Sterling stated that he would testify that Wm. E. Stanton was of sound mind in 1881, 1882, 1883 and 1884; that at the time of such conversation counsel had no material with which to prepare an affidavit to be signed, but that such evidence could and would be procured on another trial.

One of the exhibits attached to the affidavit is a certified copy of an original petition in a suit filed by Wm. Stanton, and another, in the District Court of Calhoun County against Jabez James, in trespass to try title. The petition is signed "Lackey & Stayton," and not "Leckie & Staten" as stated in the affidavit. Appellee insists that the Lackey & Stayton who signed the petition was a firm composed of Mr. Lackey and John W. Stayton, afterwards Chief Justice of the Supreme Court of Texas, both of whom have long been dead. There is nothing in the record, however, to support appellee's contention in this regard. However this may be, the matter of granting new trials in such cases is largely confided to the discretion of the trial judge, and unless an abuse of discretion is shown the appellate courts will not revise his action. It appears this suit was filed on December 14, 1903, and the case was not tried until June 26, 1907, and was therefore pending about three and one-half years. Several of the witnesses who testified as to Stanton's mental condition testified by deposition, and the interrogatories to them were crossed by defendants' attorneys who must have known the purpose and scope of evidence thus sought. No effort whatever on on the part of the defendants to procure testimony throwing light upon Stanton's mental condition is shown other than writing to the county clerk of Calhoun County for copies of certain records, and to the sheriff and county judge of that county and to one F. M. Dudgins, and the time that such letters were written was not stated. No good reason was stated for not procuring the affidavit of Dolph Sterling that he would testify to the truth of the matters related by him to defendants'

attorney. That there was no writing material at hand with which to prepare an affidavit at the time is not a sufficient excuse for not obtaining the affidavit at some time during the forty days intervening between the trial and the overruling of the motion for new trial. We do not think that the matters set up in the application show such an abuse of the discretion vested in the trial judge as to require this court to revise his ruling. The assignment is overruled.

The thirteenth assignment complains that the court erred in receiving the verdict and entering judgment thereon, because the testimony failed to show that Mary J. Worthen, who sued as guardian of plaintiff, was, in fact, such guardian. Defendant filed no plea putting her capacity to sue in issue, and therefore there was no necessity for any proof on that point. Rev. Stats., 1265, secs. 2 and 3; Dolson v. DeGanahl, 70 Texas, 621. The assignment is overruled.

The sixteenth assignment of error is as follows: "The court erred during the progress of the trial, while discussing an objection raised to the testimony of a witness, in stating, in the hearing of the jury, 'I think, Mr. Dabney, he may state whether or not he, plaintiff, was of sound or unsound mind or not.'" We do not think that the statement complained of is subject to the objection that it was an expression of an opinion of the court as to whether the witness could determine as to the soundness of plaintiff's mind. The remark was in the nature of a ruling made by the court in response to an objection that the witness had not qualified himself to express an opinion as to plaintiff's mental soundness after the witness had testified at length to acts and conduct of Stanton upon which his conclusions were based, and the jury could not have understood therefrom that it was the court's opinion that the witness had the right to determine the question of Stanton's insanity. The assignment is overruled.

The seventeenth assignment complains of the action of the court in permitting the plaintiff to ask the witness James questions as to the conduct of Stanton, and also complains of the remarks made by the trial court in answer to objections urged against the admission of certain testimony. The assignment presents two distinct questions, and is, therefore, under the rules, insufficient. The two propositions following the assignment, and intended to explain each of the points presented, can not supply the place of a valid assignment. The assignment will not be considered. Cammack v. Rogers, 96 Texas, 457.

The eighteenth assignment complains of the admission of certain testimony of the witness Dr. McFarland, the complaint being that the answers of the witness were not responsive to the questions propounded to him. The witness testified by deposition, and his deposition had been returned and filed many days before the trial began. The objection goes to the manner and form of taking the depositions, and should have been made before trial, and notice given to opposite party. This not having been done, the objection was not available to defendants when made for the first time during the trial. Missouri Pac. Ry. Co. v. Ivy, 71 Texas, 417; Lee v. Stowe, 57 Texas, 449. The assignment can not be sustained.

The nineteenth, twentieth, twenty-first and twenty-second assignments complain of the admission in evidence, over defendants' objection, of the testimony of certain witnesses, giving their opinion of Stanton's

mental condition. All these witnesses had testified to certain acts and conduct of Stanton upon which they based their opinion that he was of unsound mind. The objection is that the opinion of the witnesses as to plaintiff's mental condition was not admissible, but that the inquiry should have been confined to facts and circumstances showing mental incapacity, rather than the admission of conclusions and opinions based on same. The assignments are without merit. It seems to be now well settled that all witnesses who know the facts, and, having stated such facts, may express opinions founded upon their own knowledge as to a person's mental condition. Brown v. Mitchell, 88 Texas, 363.

The witness J. D. Crain testified by deposition. He was asked: "Was Stanton of unsound mind, or not, when you knew him? How did he impress you in this regard, if he made any impression on you?" To which the witness answered, "No, he was not of sound mind; he was generally regarded by everyone who knew him as idiotic." The last part of the answer was not responsive to the question, and objection to it should have been made before trial and notice given. (Missouri Pac. Ry. v. Ivy; Lee v. Stowe, *supra*.) Even had timely objection to the testimony been overruled, its admission would have been harmless in view of the fact that the witness had testified to substantially the same matter without objection, viz., that Stanton was a simpleton and simple-minded; at times idiotic, and other times seemed to be more sensible; but, while harmless, "he was never considered of sound mind." The assignment presenting the point is overruled.

The other assignments not specifically noticed have been examined by us, and we find no reversible error in any of them.

The judgment of the court below is affirmed.

*Affirmed.*

Writ of error refused.