**1. Habeas corpus ⬳113(9)—Transcript must bear certificate of judge, where proceedings are in vacation.**

Under Code Cr. Proc. 1911, art. 950, where proceedings for habeas corpus are in vacation, the transcript, on relator's appeal from refusal to issue the writ, to be considered, must bear the certificate of the judge.

**2. Habeas corpus ⬳113(3)—Statute authorizing appeal contemplates decision after hearing.**

Code Cr. Proc. 1911, art. 950, the statute authorizing an appeal in proceedings for habeas corpus, contemplates that it shall be taken from a decision of the trial judge or court after a hearing.

Appeal from District Court, El Paso County; W. D. Howe, Judge.

Application for habeas corpus on behalf of Fernando Lozano. From a judgment refusing the writ, relator appeals. Appeal dismissed.

J. F. Weeks and M. M. Winningham, both of El Paso, for appellant.

Alvin M. Owsley, Asst. Atty. Gen., for the State.

MORROW, J. The appellant made application to the judge of the Thirty-Fourth judicial district of the state for writ of habeas corpus. The judge refused to issue the writ, and from the refusal the appellant has sought to perfect his appeal.

[1] The order appears to have been made in vacation. Article 950, C. C. P., provides for appeal in a matter of this character, but says:

"This transcript, when the proceedings take place before the court in session, shall be prepared and certified by the clerk thereof; but when had before a judge in vacation, the transcript may be prepared by any person, under the direction of the judge, and certified by such judge."

This statute has been held uniformly to require that, where the proceeding is in vacation, the transcript, to be considered, must bear the certificate of the judge. Ex parte Malone, 35 Tex. Cr. R. 297, 31 S. W. 665, 33 S. W. 360; Ex parte Overstreet, 39 Tex. Cr. R. 468, 46 S. W. 929; Ex parte Young, 219 S. W. 1102. The state, through the Assistant Attorney General, objects to the transcript upon the ground that it does not comply with the statute, in that it does not bear the certificate of the judge.

[2] Moreover, we infer from the proceedings that the procedure in the instant case does not confer jurisdiction upon this court on appeal, for the reason that the statute au-thorizing an appeal contemplates that it shall be taken from a decision of the trial judge or court after a hearing. Ex parte Ainsworth, 27 Tex. 731; Ex parte Strong, 34 Tex. Cr. R. 309, 30 S. W. 666.

The appeal is ordered dismissed.

## BUCHANAN v. WILLIAMS et ux. (No. 2312.)

(Court of Civil Appeals of Texas, Texarkana.
Oct. 14, 1920.)

**1. Trial ⬳48—Exclusion of testimony, part of which was hearsay, not error.**

The exclusion of testimony offered as a whole is not error, where part of the testimony was hearsay, though other parts of it were competent.

**2. Trial ⬳234(4)—Party not entitled to hypothetical directed verdict in case submitted on special issues.**

Where the case was submitted to the jury on special issues, defendant had no right to have given a requested charge, directing the jury to find a verdict for him if they found in his favor on one of those issues.

**3. Appeal and error ⬳1066—Refusal of requested charge not pertinent to issues submitted harmless.**

Where the case was submitted to the jury on special issues, the refusal of a requested charge as to defendant's right to recover for improvements, if such charge was not misleading under Vernon's Sayles' Ann. Civ. St. 1914, arts. 7760, 7761, was not reversible error, where it was not pertinent to any issues submitted to the jury, and, if it had been given and determined in defendant's favor, could not have been a basis for granting him relief.

**4. Appeal and error ⬳1067—Refusal of request excluding deed held harmless under evidence.**

The refusal of defendant's requested charge that the jury should not consider a deed to plaintiff by the person in possession of the land was harmless, where it appeared without dispute that plaintiff was the bona fide heir of the former owner of the land.

Appeal from District Court, Harrison County; P. O. Beard, Judge.

Trespass to try title by J. W. Williams and wife against Ben Buchanan. Judgment for the plaintiffs, and defendant appeals. Affirmed.

This was a suit of trespass to try title and for damages, brought by appellees against appellant. The land in question was 50 acres of the Ellison survey in Harrison county. It belonged, it seems, to the community estate between Phil Jones, who died about 1893, and his wife, Susan, who died in May, 1918. It appeared from the allegations in their peti-

tion that appellees claimed that one of them, to wit, appellee Sarah Williams, was the only child of Phil and Susan Jones, and owned the land as Phil's only heir. Appellant in his pleadings claimed title thereto by force of the statute of limitations of 10 years, and further claimed that if he had not so acquired title to the land and same was recovered of him, he was entitled to be compensated for improvements which he alleged he had placed thereon. The appeal by appellant is from a judgment against him in appellees' favor for the land and $225 as rent thereof they were entitled to recover.

Scott & Lane, of Marshall, for appellant.
Davidson & Blalock, of Marshall, for appellees.

WILLSON, C. J. (after stating the facts as above). It appeared from testimony heard at the trial that Phil Jones and Susan Duncan were married August 10, 1875, and that appellee Sarah Williams, their only child, was born June 15, 1877. It further appeared that Phil and Susan separated after they had lived together a few years, and that, while they were never divorced, they never afterwards lived together. It further appeared that before he died (in or about 1893) Phil and a woman named Martha lived on the land as husband and wife, that they were living thereon when he died, and that Martha afterwards continued to live thereon until she died in February, 1916. Appellee Sarah Williams testified that in a conversation she had with Martha a short time after Phil died Martha claimed a right to occupy and use the land while she lived, and that she (Sarah) agreed she might do so.

Appellant's contention in support of his claim of title by virtue of the 10-year statute of limitations was that Phil had several children by another woman in Smith county before he married Susan Duncan; that a few days after the time when Phil died those children appeared in Harrison county and claimed to own the land; that Martha recognized their claim as superior to any she had, and that said children and Martha then agreed that Martha should continue to reside on and use the land as their tenant so long as she lived. As supporting his contention, appellant offered' to prove by his witness Turner Bell, among other things, the following: That when on his deathbed, the day or day before he died, Phil, having sent for the witness, said to him:

"I have some children at Tyler by the name of Lucas. Their mother is dead. * * * You write to Polly Lucas and tell her * * * to tell my children I bought 50 acres of land here and want them to have it."

That he, the witness, wrote as requested, and that "they," quoting from the bill of exceptions—

"came in five or six days to old lady Martha's house and then to my [witness] house and said they were Phil's children. I told them [the witness would have further testified] that their father said he wanted them to have the 50 acres of land over there, and wanted Martha to live on it until her death. Me and my wife went back over there with them, and he said: 'Ma, can you get a living out of this place?' She said: 'Yes!' He said: 'I have a home where I am, and can get a living out of it. We will leave it here with you. You keep the taxes paid up and keep the place up, and we will not interfere with you until your death, but at your death the property will fall to us.' She said: 'All right; I will do that.' And he turned to me and said, 'Mr. Bell, you hear that?' and I said I did. 'Now will you keep in touch with us of what is going on?' and I said, 'I will.' Aunt Martha got up and went and got the deed and tax receipt and gave them some of Phil's best clothes. They stayed there about two days. Phil told me the mother of the children was dead, and he gave them to a white lady Mrs. Irving. That was the first I ever heard or knew of these children."

[1] The action of the court in excluding the proposed testimony, on appellees' objection thereto that it was hearsay, is the basis of appellant's complaint in his first assignment of error. It may be that parts of the testimony excluded (for instance, the part thereof with reference to an agreement between Martha and persons claiming to be Phil's children) were not subject to the objection urged to it; but we think other parts thereof (for instance, the declaration by the parties who came to the witness' house in response to a letter he wrote that they "were Phil's children") were subject to it. The rule being that a party has no right to complain because the court excludes all of it, when part of testimony offered as a whole is subject to an objection urged to it (Railway Co. v. Washburn, 184 S. W. 580; McBride v. Kaulback, 207 S. W. 576; Tel. Co. v. McCormick, 219 S. W. 273; Cole v. Horton, 61 S. W. 503; Magee v. Paul, 159 S. W. 325; Railway Co. v. Burk, 146 S. W. 600; Nevill v. Railway Co., 187 S. W. 388), the assignment must be overruled.

The other assignments are predicated on the refusal of the trial court to give certain special charges requested by appellant.

One of those charges, had it been given, would have instructed the jury to find for appellant if they believed he and those under whom he claimed had "and held," quoting—

"peaceable, adverse and continuous possession of the property in controversy for a period of 10 years, using, occupying, and enjoying the same, next before the commencement of this suit, uninterrupted by any adverse holding."

[2] It was not error to refuse the charge, for at least two reasons: First, because it appeared that the suit was commenced by a petition filed November 24, 1919, did not appear that appellant himself ever had actual

possession of the land before January 26, 1917, and did not appear from any evidence before the court that he was entitled to claim anything on account of the possession thereof held by the woman Martha, hereinbefore mentioned. Second, because, the case having been submitted to the jury on special issues, appellant did not have a right to have the jury instructed to return a general verdict in his favor if they found for him on a particular issue. Tel. Co. v. McCormick, 219 S. W. 270; Worden v. Kroeger (Tex. Com. App.) 219 S. W. 1094.

[3] Another one of the refused charges, had it been given, would have told the jury that appellant "would be entitled to recover the reasonable value" of improvements he placed on the land if he held the property "under a deed duly executed and for a valuable consideration under a belief after investigation that he had a good title" thereto. Assuming that the charge as framed was not erroneous because calculated, had it been given, to mislead the jury by inducing them to believe appellant, under the circumstances specified, was entitled to recover for all the improvements he placed on the land, notwithstanding they also believed he did not act in good faith when he placed same there, or believed that a part of same was not "permanent" within the meaning of the statute (Vernon's Statutes, arts. 7760, 7761; Parrish v. Jackson, 69 Tex. 614, 7 S. W. 486; House v. Stone, 64 Tex. 677), we think it nevertheless was not reversible error to refuse the charge, because it was not pertinent to any issue submitted to the jury, and by itself, had it been given and determined in appellant's favor, would not have been a sufficient basis for granting him any relief.

[4] The other charges refused, had they been given, would have told the jury not to consider a deed made by the woman Martha to, appellees in determining whether they had acquired title to the land or not. We think it was not error to refuse the charges; but, if it was error, that it was harmless. That appellee Sarah Williams was the child and only child and heir of Phil and Susan Jones, who owned the land, was not seriously disputed in the testimony heard.

The judgment is affirmed.