## EASTERLING et al. v. MURPHEY et al. (No. 704.)

Court of Civil Appeals of Texas. Waco. Oct. 25, 1928.

Rehearing Denied Dec. 6, 1928.

330

Holland, Bartlett, Thornton & Chilton, of Dallas, for appellants.

W. J. Bryant, of Wortham, and Davis, Jester & Tarver, of Corsicana, for appellees.

STANFORD, J. This suit is by the heirs of Leroy Easterling in trespass to try title to an undivided half interest in 77 acres of land, and for damages, and to recover their proportionate part of certain money received by appellees for an oil lease on said land. Appellees pleaded not guilty, and the 3, 5, 10, and 25 years' statutes of limitation. Appellants, in a supplemental petition, pleaded minority of some of appellants, and the service of Leroy Easterling in the United States navy in avoidance of the pleas of limitation. The case was tried before the court without a jury on an agreed statement of facts. The court, at the request of appellants, also filed findings of fact and conclusions of law. The court rendered judgment for appellees, and appellants have duly appealed and present the record for review.

Under their first proposition, appellants contend, in effect, that under the evidence they were entitled to recover title to an undivided interest of 27 acres in the 77-acre tract. The agreed statement of facts shows, and the court found, that the 77 acres of land was conveyed by T. D. Bounds to G. W. Bounds on July 30, 1877; that on this date G. W. Bounds and Hannah Bounds were husband and wife, and that 50 acres of said 77 acres was a gift from T. D. Bounds to his son, G. W. Bounds, and that 27 acres of said 77 acres represented land Hannah Bounds had inherited from her parents. So 50 acres of the 77 acres became the separate property of G. W. Bounds, and 27 acres of same became the separate property of his wife, Hannah Bounds. The wife, Hannah Bounds, died intestate in October, 1878, and left surviving her G. W. Bounds, her husband, and Rosa Bounds, her only child, an infant about a month old. Rosa Bounds grew to womanhood and married Sam Easterling in October, 1895. In September, 1897, the said Rosa (Bounds) Easterling died intestate and left surviving her husband, Sam Easterling, and one child, Leroy Easterling, who was born September 19, 1897. Leroy Easterling's name was changed to Roy Bounds, and in this name he enlisted in the United States navy on January 2, 1917, and served there until January 18, 1921, on which date he was honorably discharged. He died July 25, 1921, in Freestone county, Tex., intestate and without issue, but left a surviving wife, Emma Bounds. This suit was brought by all of the heirs of Roy Bounds. The trial court found that appellees Murphey and wife were entitled to recover the land under the 3, 5, 10, and 25 years' statutes of limitation. If there is evidence supporting the above finding as to either statute of limitation, then the judgment of the trial court should be affirmed.

G. W. Bounds, on November 25, 1889, traded the 77 acres to T. A. Bounds for 125½ acres, the deed reciting the following consideration:

"The sum of $450.00 paid by T. A. Bounds, as follows: Part payment for 85½ acres of land out of 125½ acre tract," etc.

Said deed, in describing the land, contained the following recitals:

"One-half of 77 acres of land * * * the other half to be deeded to T. A. Bounds when Rosa May Bounds, the minor heir, becomes of age. When said title is perfected to said T. A. Bounds, then the said T. A. Bounds * * * is to perfect title to the 40 acres of land reserved out of the 125½ acre tract. * * * The said T. A. Bounds to take immediate possession of said 77 acre tract, to pay taxes and receive the benefits of same."

Fieldnotes of the entire 77-acre tract are given. Said recitations in this deed conclude as follows:

"The minor's half of 77 acre tract reserved above is to be equal in value, including improvements, as the 40 acres reserved out of a 125½ acre tract this day deeded to me by T. A. Bounds."

This deed was filed for record December 22, 1890. On October 15, 1890, T. A. Bounds executed a deed to T. F. Castles, said deed containing the following description:

"All that certain one-half of 77 acres of land * * * the other half to be deeded to T. F. Castles by G. W. Bounds when Rosa May Bounds, the minor heir of G. W. Bounds, becomes of age. When said title is perfected to said T. F. Castles by G. W. Bounds, then the said Castles * * * is to perfect title to 40 acres of land reserved by T. A. Bounds out of 125½ acre tract * * * conveyed to the said Castles in this deed for the purpose of securing the title of the minor's half. The said Castles to take immediate possession of said 77 acre tract, to pay taxes and receive the benefits of same and convey title to G. W. Bounds to 40 acres in Ford Survey when title to minor's half is perfected."

This deed contains the same fieldnotes of the 77-acre tract as in deed from G. W. Bounds to T. A. Bounds. Then follows a warranty deed from G. W. Bounds to T. F. Castles, dated December 29, 1898, filed Febru-

ary 3, 1899, recorded in volume 90, p. 216, Navarro County Deed Records, reciting as consideration 40 acres of land, a part of the H. Ford survey in Navarro county, Tex., deeded on the same date to G. W. Bounds by T. F. Castles. This deed from G. W. Bounds to T. F. Castles contained the following description:

"27 acres of land, being the undivided interest of Leroy Easterling, a minor, and 11½ acres my own, the two being one-half undivided interest in 77 acres of the Turner Smith Survey in said county, bounded as follows * * * containing 77 acres more or less."

■ From the agreed statement upon which this case was tried, and the findings of the court, it is evident that, of the 77 acres deeded by T. D. Bounds to G. W. Bounds, 50 acres of same was the separate property of G. W. Bounds and 27 acres of same was the separate property of his wife, Hannah Bounds, and on the death of Hannah Bounds, intestate, her 27-acre undivided interest, subject to the life estate of G. W. Bounds in one-third of said 27 acres, vested in her only child, Rosa May Bounds, who afterwards married S. H. Easterling; that on the death of Rosa May Easterling, intestate, her 27-acre interest, subject to the life estate of G. W. Bounds in one-third of same, descended and vested in her only child, Leroy Easterling, known as Roy Bounds. So the only part of said 77 acres in controversy here is an undivided interest of 27 acres. The reference to the minor's interest in the deeds from G. W. Bounds to T. A. Bounds, and from T. A. Bounds to T. F. Castles as a half interest, could not and did not have the effect to increase the fixed and established interest of said minor. There is no element of estoppel in this case. However, the recitations in the deeds above are important, in that they show the minor's interest was recognized, and so there was no adverse holding shown and limitation did not in any event run in favor of T. A. Bounds, nor T. F. Castles.

■■ There is another reason why we think the 25-year statute of limitation never began to run in favor of appellees nor any of their predecessors in title. As we understand the 25-year statute of limitation (article 5519), its purpose was, where one holds lands by peaceable, adverse claim of right in good faith under a *regular* chain of title, with all the muniments of such title duly recorded, for a period of 25 years, such party shall be deemed to have good title, regardless of the undisclosed rights of minors, married women, and all others under such disabilities, and against whom our 3, 5, and 10 years' statutes would not run. The court found in this case that the title had passed out of the state, and that T. D. Bounds was the common source. The deed from T. D. Bounds to G. W. Bounds was regular, conveying the 77 acres. The deed from G. W. Bounds to T. A. Bounds

conveyed a half interest in said 77 acres, and recited, in effect, that the other half interest would be by him deeded to T. A. Bounds when said Rosa May Bounds, a minor, becomes of age. The deed from T. A. Bounds to T. F. Castles conveys a half interest in said 77 acres and recites, in effect, the other half interest will be conveyed by G. W. Bounds to T. F. Castles when Rosa May Bounds, the minor heir of G. W. Bounds, becomes of age. On December 29, 1898, G. W. Bounds did execute a deed to T. F. Castles, containing the following language in the description:

"27 acres of land, being the undivided interest of Leroy Easterling, a minor, and 11½ acres my own, the two being one-half undivided interest in 77 acres of the Turner Smith Survey in said county, bounded as follows:"

Then follows the same description of the 77 acres as in the deed from T. D. Bounds to G. W. Bounds. The above three deeds were all duly recorded and constituted notice to T. A. Bounds and all subsequent purchasers, including appellees, that the title to at least 27 acres of said land was outstanding in a minor, and that the deed from G. W. Bounds purporting to convey the 27 acres belonging to Leroy Easterling, a minor, was ineffectual to convey any title to same, but was sufficient to, and did, convey the title to the 11½ acres owned by G. W. Bounds, and his said life estate in one-third of said 27 acres. Stratton et al. v. Robinson, 28 Tex. Civ. App. 285, 67 S. W. 539. While the record shows a regular chain of title in appellees to 50 acres of said 77 acres, and the life estate of G. W. Bounds, who is still living, in one-third of the 27 acres, it failed to show a "regular chain of title" in appellees to the 27 acres, and in view of the state of the title as shown by recorded deeds, appellees could not claim in good faith to own the 27 acres. Parrish v. Jackson, 69 Tex. 614, 7 S. W. 486; Settegast v. O'Donnell, 16 Tex. Civ. App. 56, 41 S. W. 85; Daugherty v. Yates (Tex. Civ. App.) 35 S. W. 940. There is no evidence that G. W. Bounds had qualified as guardian of said minor or that he was in any way authorized to convey said minor's land. We do not think the 25-year statute of limitation was applicable to this case as made by the record. Article 5519, Revised Statutes; Green v. Hugo, 81 Tex. 452, 17 S. W. 79, 26 Am. St. Rep. 824; Silcock v. Baker, 25 Tex. Civ. App. 508, 61 S. W. 939; Burnham v. Hardy Oil Co., 108 Tex. 555, 195 S. W. 1139; Martinez v. Logan (Tex. Civ. App.) 222 S. W. 611.

■■ There is another reason why we think the 25-year statute of limitation was ineffectual to afford appellees any relief. Roy Easterling was born July 19, 1897. If the 25-year statute ever began to run against him, it did not do so until the deed from T. F. Castles to Kate Williams was filed for record September 5, 1899, for this was the first deed that

pvrported to convey the entire 77 acres. From said date to the filing of this suit, January 15, 1926, is 26 years, 4 months, and 10 days; but Roy enlisted in the United States navy January 2, 1917, and was in active service until January 18, 1921, a period of over 4 years. Appellants contend that, under the provisions of the Sailors and Soldiers Civil Relief Act of 1918 (40 Stat. 440), the time Roy was in the service, in computing limitation, should be deducted. Section 100 (Barnes' Code 1919, § 10313) of said act reads as follows:

"*Purpose of Statute.*—For the purpose of enabling the United States the more successfully to prosecute and carry on the war in which it is at present engaged, protection is hereby extended to persons in military service of the United States in order to prevent prejudice or injury to their civil rights during their term of service and to enable them to devote their entire energy to the military needs of the nation, and to this end the following provisions are made for the temporary suspension of legal proceedings and transactions which may prejudice the civil rights of persons in such service during the continuance of the present war."

Section 205 (Barnes' Code 1919, § 10322) of said act provides:

"The period of military service shall not be included in computing any period now or hereafter to be limited by any law for the bringing of any action by or against any person in military service or by or against his heirs, executors, administrators, or assigns, whether such cause of action shall have accrued prior to or during the period of such service."

Section 603 (Barnes' Code 1919, § 10347) of said act provides:

"This act shall remain in force until the termination of the war, and for six months thereafter: Provided, That wherever under any section or provision of this act a proceeding, remedy, privilege, stay, limitation, accounting, or other transaction has been authorized or provided, the due exercise or enjoyment of which may extend beyond the period herein fixed for the termination of this Act, such section or provision shall be deemed to continue in full force and effect so long as may be necessary to the exercise or enjoyment of the proceeding, remedy, privilege, stay, limitation, accounting, or transaction aforesaid."

Section 3115¹⁴⁄₁₅f (U. S. Comp. St.) provides:

"In the interpretation of any provision relating to the duration or date of the termination of the present war * * * the date when this resolution becomes effective shall be construed and treated as the date of the termination of the war."

The above resolution became effective March 3, 1921. U. S. Compiled Statutes 1918, Title 17A; U. S. Compiled Statutes 1925, Supp. § 3115¹⁴⁄₁₅f. That the above act of Congress is constitutional and binding upon our state courts is settled by the decisions of

our appellate courts. Bell v. Baker (Tex. Com. App.) 260 S. W. 158; Kuehn v. Nengebauer (Tex. Civ. App.) 216 S. W. 259; Erickson v. Macy, 231 N. Y. 86, 131 N. E. 744, 16 A. L. R. 1322. But appellees contend the above act has been repealed and no longer has any application. It will be observed that section 10322 of Barnes' Code above, as applied to the facts of this case, provides:

"The period of military service shall not be included in computing any period now or hereafter to be limited by any law for the bringing of any action by * * * any person in military service or by * * * his heirs, executors, administrators, or assigns, whether such cause of action shall have accrued prior to or during the period of such service."

Roy Easterling was in the active service for over 4 years. The purpose of the act was that during this time he should be free to give all his energies to the prosecution of the war without loss or damage to his civil rights, and to accomplish this, said act provided that the time of such service should not be included in determining whether or not he was barred from bringing this action by the 25-year statute of limitation; and this right or privilege was extended to his heirs or legal representatives in case of his death. During the 4 years he was devoting all of his time and energies to the prosecution of the war, he could not have brought said suit, and, this being true, it was just and proper to give him the same length of time in which to sue, excluding the time he spent in the service, as every other person is allowed. This act has never been repealed. Section 603 (Barnes' Code 1919, § 10347) of said act provides:

"This act shall remain in force until the termination of the war, and for six months thereafter: Provided, That wherever under any section or provision of this act a * * * privilege * * * has been authorized or provided, the due exercise or enjoyment of which may extend beyond the period herein fixed for the termination of this act, such section or provision shall be deemed to continue in full force and effect so long as may be necessary to the exercise or enjoyment of the * * * privilege * * * aforesaid."

Roy (Easterling) Bounds died on or about July 25, 1921. Appellants as his heirs had the right, if the 25-year statute ever began to run, to have the 4 years he served in the army deducted. So the 25-year statute constituted no defense.

■■ Was the 3, 5, or 10 year statute of limitation available to appellees? Of course, under these statutes limitation could in no event begin to run against the minor until he became of age, July 19, 1918. At this time he was in the navy, and continued in the service until January 18, 1921. So under the federal act above discussed, limitation could not begin to run against him in any event until he was discharged on January 18, 1921.

From this date to January 15, 1926, the date this suit was filed, was 4 years, 11 months, and 27 days; but Roy Easterling died intestate on July 7, 1921, in Freestone county, Tex., without issue, leaving appellants as his only heirs. There was no administration upon his estate, so limitation ceased to run against his cause of action for one year. Article 5538, Revised Statutes; Hendricks v. Huffmeyer (Tex. Civ. App.) 27 S. W. 777. So in'no event was the 5 or 10 year statute available as a defense to appellees. The 3-year statute of limitation was not available, in that the possession of appellees and their grantors was not under title or color of title within the meaning of article 5507, Revised Statutes, prescribing a 3-year period of limitation, and article 5508, defining "title" and "color of title:" Appellees claim title under all of the above deeds. All of said deeds were recorded and constituted notice to appellees that at least the title to 27 acres of the 77 acres belonged to either the minor Rosa May Bounds or the minor Leroy Easterling, and that said title was still outstanding in one of said minors. As to an interest of 27 acres in said land, appellees never acquired title or color of title, within the meaning of the above articles of our statutes. Articles 5507, 5508, Revised Statutes; Burnham v. Hardy Oil Co., 108 Tex. 555, 195 S. W. 1139; Green v. Hugo, 81 Tex. 452, 17 S. W. 79, 26 Am. St. Rep. 824; Cole et al. v. Grigsby et al. (Tex. Civ. App.) 35 S. W. 680, par. 5; Silcock v. Baker, 25 Tex. Civ. App. 508, 61 S. W. 939. Appellants' cause of action was not barred by any one of our statutes of limitation. The appellants were entitled to recover an undivided interest of 27 acres in said land, subject to the life estate of G. W. Bounds in one-third of same, said life estate now owned by appellees.

Appellants further contend that they were entitled to recover their proportionate part of the money received by appellee J. N. Murphey for an oil lease on said 77 acres of land. The record shows; That appellees J. M. Murphey and wife, on October 5, 1921, executed an oil, gas, and mineral lease to Reynolds and Pettit on the 77 acres involved in this case and also 50 acres not involved, and received on said date $6,350 for the lease on said 127 acres. Said lease was for 5 years and provided if no well was commenced on said land by October 4, 1922, the lease should terminate, unless the lessees paid the sum of $127, which should defer the commencement of a well for 12 months, etc. That no well was begun under said lease by October 4, 1922, and no well was ever begun, and no rentals were ever paid to defer the commencement of a well, and that said lease was forfeited on October 4, 1922, and was of no force and effect after said date, and that no oil, gas, or other minerals were ever produced under said lease. The money received by appellees for the mineral lease was personal property, and the claim asserted by appellants is a claim for the recovery of personal property and controlled by the 2-year statute of limitation. Article 5526, § 4, Revised Civil Statutes. Appellants contend as appellants and appellees were cotenants in ownership of the 77 acres, limitation could not begin to run against appellants' right to recover a part of the lease money until a demand therefor was made by appellants and such demand refused, and that such demand was never made, and therefore limitation did not begin to run against such right until this suit was filed. This might be true, if appellees were at all times recognizing Roy Easterling and his heirs as cotenants; but such was not the case. The deeds from T. F. Castles to Kate Williams and from Kate Williams to W. A. Walthall, and from W. A. Walthall to J. M. Murphey, all of which were timely filed and duly recorded, purported to convey the entire title to said 77 acres, and under said deeds appellees and their said grantors held, used, and occupied the entire 77 acres under claim of ownership from about September 5, 1899. So limitation began to run against appellants' rights to recover a part of the lease money on October 4, 1921, the date same was paid to appellee J. M. Murphey. Appellants contend further that some of appellants, who were half-sisters of Roy Easterling, were minors, and limitation did not run against them. Roy Easterling died intestate without issue July 25, 1921. The lease money was collected by appellee Murphey on October 4, 1921. It will thus be seen the lease was executed and the $6,350 collected after Roy Easterling died, and after his interest in the 27 acres of land had descended and vested in his heirs. So the cause of action, if any, for an interest in said lease money arose in favor of said heirs in proportion to the interest each owned in said land, and limitation began to run against all of them who were of age on October 4, 1921, the date said lease money was collected, and continued until this suit was filed January 1, 1926. It appears from the record that all of the appellants were barred by the 2-year statute of limitation at the time this suit was filed and could not recover in any event, unless it be Lois Easterling and Jessie Easterling, who were minors at the time this suit was filed. But there is another reason why we think none of the appellants were entitled to recover any part of said lease money. The recorded deeds, as above pointed out, were notice to the lessees and all others that appellants were the owners of an undivided interest of 27 acres in the 77 acres included in the lease, so the lease by appellees was effectual to convey their interest in said land, but wholly ineffectual to convey any interest belonging to appellants. Broom v. Pearson (Tex. Civ. App.) 180 S. W. 895 (writ refused). The $6,350 paid to appellees was not rents, in the usual meaning of

such term. It was not the proceeds of minerals or anything else taken out of or off of said land, and so represented no element of injury to the land. It accrued to appellees and arose wholly out of a contract between appellees and Reynolds and Pettit, and said contract in no way resulted in any waste or injury to the land. With this contract appellants had no connection. It never was their contract, and they never at any time ratified it. The money was received by the appellees on the contract and not out of the land, and was, as to the lessees, money paid out and not money received from the land. If there ever was any mineral under said land, it is still there. Appellants not having shown any loss or damage to their interest in said land, they were not entitled to recover any part of the lease money. McNeely et al. v. South Penn Oil Co., 58 W. Va. 438, 52 S. E. 480; 3§ Cyc. § 2, p. 105.

The judgment of the trial court is reversed and judgment here rendered in favor of all appellants for an undivided interest of 27 acres in the 77 acres described in their petition, subject, however, to the life estate of G. W. Bounds in one-third of said 27 acres, now owned by appellees, but that appellants recover no part of the lease money received by appellees.

### On Motion for Rehearing.

In their motion for rehearing herein appellees earnestly insist that we are in error in applying the 25-year statute of limitation, as prescribed in article 5519, instead of applying said article as amended by the Acts of the Fortieth Legislature, which became effective 90 days from and after March 16, 1927 (Gen. & Sp. Acts 1927, c, 250). This suit was filed January 15, 1926, and was tried January 28, 1928. It will thus be seen the amendment became effective June 16, 1927, more than a year after the suit was filed, but it was in effect at the time the case was tried, January 28, 1928. The running of limitation ceased on the filing of the suit, and the rights of the parties became fixed, so far as affected by the 25-year statute of limitation, as said statute then existed. So far as the 25-year statute is concerned, appellants' vested right in the land, under the law in force at that time, had not been lost. They were at that time the owners of the land and were suing for possession and to establish their title; and we think no action the Legislature could thereafter take could destroy their right of property which became fixed under existing law. We know of no case, and appellees cite none, where it has been held that a property right not barred at the time suit was filed was destroyed by an act of the Legislature subsequent to the filing of the suit. Article 1, § 16, Constitution of Texas; Mellinger v. City of Houston, 68 Tex. 57, 3

S. W. 249; McCutcheon v. Smith (Tex. Civ. App.) 194 S. W. 831; Slover v. Union Bank, 115 Tenn. 347, 89 S. W. 399, 1 L. R. A. (N. S.) 528.

Appellees' motion is overruled.